V.  Andre Sherman (Cal. State Bar No. 198684)
  *asherman@girardikeese.com*
**GIRARDI | KEESE**
1126 Wilshire Boulevard
Los Angeles, California 90017
Tel: (213) 977-0211 / Fax: (213) 481-1554

Edwin Aiwazian (Cal. State Bar No. 232943)
  *edwin@lfjpc.com*
Arby Aiwazian (Cal. State Bar No. 269827)
  *arby@lfjpc.com*
Joanna Ghosh (Cal. State Bar No. 272479)
  *joanna@lfjpc.com*
**LAWYERS *for* JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203
Tel: (818) 265-1020 / Fax: (818) 265-1021

*Attorneys for* Plaintiff

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*(left margin, rotated)* **LAWYERS *for* JUSTICE, PC** · 410 West Arden Avenue, Suite 203 · Glendale, California 91203

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW DAWSON; individually, and on behalf of other members of the general public similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>HITCO CARBON COMPOSITES, INC., an unknown business entity; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No.: 2:16-cv-07337-PSG-FFM<br><br>Honorable Philip S. Gutierrez<br>Courtroom 6A<br><br>**CLASS ACTION**<br><br>**DECLARATION OF EDWIN AIWAZIAN IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>[Notice of Motion and Motion for Preliminary Approval of Class Action Settlement; Declaration of Proposed Class Counsel (V. Andre Sherman); Declarations of Proposed Class Representatives (Andrew Dawson and Darryl Sterling); and [Proposed] Order filed concurrently herewith]<br><br>Date:          June 27, 2019<br>Time:          1:30 p.m.<br>Courtroom:   6A<br><br>Complaint Filed:  August 29, 2016<br>FAC Filed:        February 21, 2017<br>SAC Filed:        June 5, 2017<br>Jury Trial Date:  None Set |

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

## DECLARATION OF EDWIN AIWAZIAN

I, **Edwin Aiwazian**, hereby declare as follows:

1.     I am an attorney duly licensed to practice law before all courts of the State of California and all United States District Courts in the State of California. I am a member of Lawyers *for* Justice, PC, attorneys of record for Plaintiff Andrew Dawson ("Plaintiff Dawson") in the above-captioned action.  The facts set forth in this declaration are within my personal knowledge or based on information and belief and, if called as a witness, I could and would competently testify thereto:

### EDUCATION

2.     In May of 2004, I graduated from *Pepperdine University School of Law* with a <u>Juris Doctor</u> degree.  I have extensive formal training in dispute resolution and negotiation from the Straus Institute for Dispute Resolution as part of its <u>Masters in Dispute Resolution</u> degree program.   In addition, I have previously served as a *pro bono* mediator for the Los Angeles Superior Court.  In October of 2000, I obtained a <u>Litigation Paralegal Certificate</u> from the *UCLA Extension Program*.   During the summer of 2000, I studied <u>Legal Writing</u> at *Harvard University*.   In April of 1999, I obtained a <u>Bachelor of Arts</u> degree in Communication with a concentration in Natural Sciences from *Pepperdine University*.

### JUDICIAL EXTERNSHIPS

3.     From approximately September 2002 to approximately December 2002, I served as a <u>Judicial Extern</u> to the Honorable Kim McLane Wardlaw of the *United States Court of Appeals for the Ninth Circuit*.  From approximately June 2002 to approximately August 2002, I served as a <u>Judicial Extern</u> to the Honorable Earl Johnson, Jr. of the *California Court of Appeal for the Second Appellate District*.

///

///

**DECLARATION OF EDWIN AIWAZIAN IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

**LITIGATION AND CLASS ACTION EXPERIENCE**

4.      In December of 2004, I obtained a license to practice law from the California State Bar.   From approximately December 2004 to approximately August 2008, I was employed by *Girardi & Keese*.

5.      At *Girardi & Keese*, my practice focused on class actions and other complex cases involving toxic torts and products liability.  In addition, I gained substantial experience on cases involving insurance bad faith, premises liability, and medical negligence.   While employed by *Girardi & Keese*, I argued approximately 100 motions, took or defended approximately 150 depositions, and prepared dozens of expert witnesses for deposition or trial.

6.      Since its inception in or around October of 2008, our firm has almost exclusively focused on the prosecution of consumer and employment class actions, involving wage-and-hour claims, race discrimination, unfair business practices or consumer fraud.   Currently, we are the attorneys of record in over a dozen employment-related putative class actions in both federal and state courts in the State of California.   Our firm has successfully litigated cases involving the executive, administrative, and other overtime exemptions to the State of California and federal minimum wage and overtime compensation requirements.  During this relatively short time, in association with other law firms, we have recovered millions of dollars on behalf of thousands of individuals in California.

**EXAMPLES OF CLASS ACTION RESULTS**

7.      What follows are just a few examples of the type of results we have achieved on behalf of our clients:

a)      Our firm, in association with other co-counsel, represented the plaintiffs in a wage-and-hour class and representative action against a major property management company involving allegations of misclassification of various "manager" positions.   On September 20, 2010, the court granted final approval of the class and representative action settlement.   The Los Angeles

2

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

County Superior Court Case Number is BC400414.

b)     Our firm, in association with other co-counsel, represented the plaintiffs in a wage-and-hour class action against a national retailer involving allegations of misclassification of the "Assistant Store Manager" position.   On October 28, 2010, the court granted final approval of the class action settlement. The Los Angeles County Superior Court Case Number is BC413498.

c)     Our firm, in association with other co-counsel, represented the plaintiffs in a wage-and-hour class and representative action against a national property management company involving allegations of misclassification of the "Property Manager" position.  On May 23, 2012, the court granted final approval of the class and representative action settlement.   The Los Angeles County Superior Court Case Number is BC430918.

d)     Our firm, in association with other co-counsel, represented the plaintiffs in a wage-and-hour class action against a national retailer involving allegations of misclassification of the "Store Manager" position.   On June 10, 2011, the court granted plaintiffs' motion for class certification.  On August 26, 2013, the court granted final approval of the class action settlement.   The Los Angeles County Superior Court Case Number is BC424012.

e)     Our firm, in association with other co-counsel, represented the plaintiffs in a wage-and-hour class and representative action against a bank, involving allegations of misclassification of the "Assistant Branch Manager" position.   On August 27, 2013, the court granted final approval of the class and representative action settlement.  The Kern County Superior Court Case Number is S-1500-CV-273194-LHB.

f)     Our firm, in association with other co-counsel, represented the plaintiffs in a wage-and-hour class and representative action against a national wholesale distributor of plumbing and builder supplies, involving allegations of misclassification of multiple salaried "manager" positions.  On May 22, 2014, the

3

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

1  court granted final approval of the class and representative action settlement.  The
2  Sacramento County Superior Court Case Number is 34-2012-00136285.

3  g)  Our firm, in association with other co-counsel, represented the
4  plaintiffs in a wage-and-hour class action involving allegations of misclassification
5  of the "Operations Manager" position.  On September 16, 2014, the court granted
6  plaintiffs' motion for class certification.  The Los Angeles County Superior Court
7  Case Number is BC478769.

8  h)  Our firm, in association with other co-counsel, represented the
9  plaintiffs in a wage-and-hour class and representative action against a national
10 retailer of household items, on behalf of hourly-paid or non-exempt employees.
11 On May 27, 2015, the court granted final approval of the class and representative
12 action settlement.  The San Francisco County Superior Court Case Number is
13 CGC-13-532344.

14 i)  Our firm, in association with other co-counsel, represented the
15 plaintiffs in a wage-and-hour class action involving allegations of misclassification
16 of the salaried residential "Property Manager" position.  On September 17, 2015,
17 the court granted plaintiffs' motion for class certification.  The Los Angeles
18 County Superior Court Case Number is BC474784.

19 j)  Our firm, in association with co-counsel Girardi & Keese,
20 represented the plaintiffs in a wage-and-hour class and representative action
21 against a national retailer of upscale hardware and home furnishings, on behalf of
22 non-exempt employees.  On April 28, 2016, the court granted final approval of the
23 class and representative action settlement.  The Los Angeles County Superior
24 Court Case Number is JCCP4794.

25 k)  Our firm, in association with co-counsel Girardi & Keese,
26 represented the plaintiffs in a wage-and-hour class and representative action
27 against a national retailer of apparel and fashion accessories, on behalf of non-
28 exempt employees.  On August 5, 2016, the court granted final approval of the

**DECLARATION OF EDWIN AIWAZIAN IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

1    class and representative action settlement.   The Los Angeles County Superior

2    Court Case Number is BC488069.

3         l)     Our firm, in association with co-counsel Girardi & Keese,

4    represented the plaintiffs in a wage-and-hour class action against a national retailer

5    of   apparel,   accessories,   and   home   products,   involving   allegations   of

6    misclassification of the "Department Manager" position.  On August 12, 2016, the

7    court granted plaintiffs' motion for class certification.   The Alameda County

8    Superior Court Case Number is RG13680477.

9         m)    Our firm represented the plaintiff in a representative action

10   under the Private Attorneys General Act, against a real estate and property

11   management company, on behalf of non-exempt employees. On November 4,

12   2016, the Court granted approval of the settlement. The Orange County Superior

13   Court Case Number is 30-2015-00775439-CU-OE-CXC.

14        n)     Our firm, in association with other co-counsel, represented the

15   plaintiffs in a wage-and-hour class action against a full-service bank, on behalf of

16   non-exempt employees. On November 18, 2016, the court granted final approval

17   of the class action settlement. The San Francisco County Superior Court Case

18   Number is CJC-13-004839.

19        o)     Our firm, in association with co-counsel Girardi & Keese,

20   represented the plaintiffs in a wage-and-hour class and representative action

21   against a consumer packaging company, on behalf of non-exempt employees. On

22   March 10, 2017, the court granted final approval of the class and representative

23   action settlement. The Los Angeles County Superior Court Case Number is

24   BC590429.

25        p)     Our firm, in association with other co-counsel, represented the

26   plaintiffs in a wage-and-hour class and representative action against a

27   manufacturer of food service industry supplies on behalf of non-exempt

28   employees. On April 14, 2017, the court granted final approval of the class and

5

**DECLARATION OF EDWIN AIWAZIAN IN SUPPORT OF PLAINTIFF'S MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

**LAWYERS** *for* **JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

representative action settlement. The Orange County Superior Court Case Number is 30-2015-00810013-CU-OE-CXC.

q)   Our firm represented the plaintiffs in a wage-and-hour class and representative action against a food company on behalf of non-exempt employees. On June 30, 2017, the court granted final approval of the class and representative action settlement. The Sacramento County Superior Court Case Number is 34-2015-00175871.

r)   Our firm represented the plaintiffs in a wage-and-hour class and representative action against a chocolate company on behalf of non-exempt employees. On July 19, 2017, the court granted final approval of the class and representative action settlement. The Alameda County Superior Court Case Number is RG15764300.

s)   Our firm represented the plaintiffs in a wage-and-hour class and representative action against a manufacturer of plastic containers on behalf of non-exempt employees. On October 31, 2017, the court granted final approval of the class and representative action settlement. The Los Angeles County Superior Court Case Number is BC577233.

t)   Our firm, in association with other co-counsel, represented the plaintiffs in a wage-and-hour class and representative action against a global provider of flexible office space solutions. On February 15, 2018, the court entered an order granting final approval of the class and representative action settlement. The Los Angeles County Superior Court Case Number is BC498401.

## PRELIMINARY APPROVAL

8.   Attached hereto as "**EXHIBIT 1**" is a true and correct copy of the fully executed Stipulation for Leave to file Third Amended Class Action Complaint and Settlement and Release of Class Action and PAGA Claims ("Settlement," "Agreement," or "Settlement Agreement") entered into by and between Plaintiff Andrew Dawson and proposed plaintiff Darryl Sterling

**DECLARATION OF EDWIN AIWAZIAN IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

**LAWYERS** *for* **JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

1 ("Proposed Plaintiff Darryl Sterling," together with Plaintiff Dawson referred to

2 herein as "Plaintiffs") and Defendant HITCO Carbon Composites, Inc.

3 ("Defendant"). Attached as "Exhibit C" to the Settlement Agreement is a true and

4 correct copy of the proposed Notice of Class Action Settlement (hereinafter

5 referred to as the "Class Notice"). The parties have also drafted and agreed to the

6 form and content of the proposed Third Amended Class Action Complaint for

7 Damages and Complaint Enforcement Under the Private Attorneys General Act,

8 California Labor Code § 2698, Et Seq. ("Third Amended Complaint"), which is

9 attached as "Exhibit 1" to the [Proposed] Order Granting Preliminary Approval of

10 Class Action Settlement, filed concurrently herewith. As part of the Settlement,

11 the parties agreed to amend the complaint in order to, *inter alia*, add Proposed

12 Plaintiff Sterling as a named plaintiff and to flesh out and formally allege the

13 allegations, which were ascertained, litigated, mediated, and settled. Class Counsel

14 respectfully request that the Court grant leave to file the Third Amended

15 Complaint so that the terms of the Settlement Agreement and the intent of the

16 parties may be effectuated.

17      9. The effectiveness of Lawyers *for* Justice, PC and Girardi & Keese

18 (collectively, "Class Counsel") in prosecuting the above-entitled action has

19 translated into tangible monetary benefits for the Class Members in the following

20 respects: (1) Class Members recover over a reasonably short period of time as

21 opposed to waiting additional years for the same, or possibly, no recovery at all;

22 (2) a guaranteed result that compares favorably with other similar class action

23 settlements of this type given the strengths and weaknesses of the of the case, and

24 (3) significant savings in litigation costs and expenses that would have only

25 increased significantly had the case progressed through certification, trial, and/or

26 appeals.

27 ///

28 ///

**DECLARATION OF EDWIN AIWAZIAN IN SUPPORT OF PLAINTIFF'S MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

10.    I have been actively engaged in this litigation from its inception, as have several other members of Lawyers *for* Justice, PC. The ongoing work has been extensive, demanding, and ultimately successful in achieving a substantial settlement resolution. Before filing this lawsuit, Class Counsel investigated and researched the facts and circumstances underlying the pertinent issues and applicable law.  This required thorough discussions and interviews with Plaintiffs and multiple Class Members, and research into the various legal issues in this case, namely, the current state of the law as it applied to certification, off-the-clock theory, meal and rest periods, wage-and-hour enforcement, PAGA representative claims, collective bargaining agreements, Plaintiffs' claims, and Defendant's potential defenses.  Based on Class Counsel's research and investigations, Class Counsel determined that Plaintiffs' claims were well-suited for class action and representative adjudication owing to what appeared to be a common course of conduct affecting a similarly-situated group of hourly-paid and non-exempt employees of Defendant within the State of California.

11.    Over the course of this litigation, Plaintiffs and Defendant engaged in extensive settlement negotiations to try to resolve this lawsuit.  These efforts included participating in a private mediation on October 24, 2018, conducted by Louis M. Marlin, Esq., a well-respected mediator who is highly experienced in mediating complex wage-and-hour matters.  During the mediation, the parties exchanged information and discussed various aspects of the case, including but not limited to, the risks and delays of further litigation, the risks to the parties of proceeding with certification and/or representative adjudication, the law relating to off-the-clock theory and meal and rest periods, wage-and-hour enforcement, and representative claims under the Private Attorney General Act ("PAGA"), the evidence produced and analyzed, and the possibility of appeals, among other things.  With the aid of the mediator's evaluations and proposal, the parties ultimately reached the Settlement to resolve this case in its entirety.  During all

**LAWYERS *for* JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

8

**LAWYERS** *for* **JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

1    settlement discussions, the parties conducted their negotiations at arm's length in

2    an adversarial position.  The Settlement that has been reached is a fair, reasonable,

3    and adequate resolution of this case.

4         12.    The parties used the pre-mediation time period to investigate the

5    veracity, strength, and scope of the claims.  Class Counsel interviewed Plaintiffs as

6    well as other Class Members and percipient witnesses in order to obtain

7    information about the case, including, *inter alia*, information about the nature of

8    the work they performed and the hours that they worked while employed by

9    Defendant.  The information obtained assisted Class Counsel in calculating the

10   value of the claims and the monetary recovery that could potentially be awarded to

11   the Class Members, and also permitted a full and complete understanding of

12   Defendant's employment policies, practices, and procedures.  This information

13   proved invaluable in negotiating the Settlement with Defendant and reaching the

14   amount that fairly and adequately compensates the Class Members for their claims.

15        13.    Prior to the mediation, Class Counsel propounded multiple sets of

16   formal discovery requests onto Defendant and reviewed Defendant's responses

17   thereto, Class Counsel reviewed formal discovery requests propounded by

18   Defendant and assisted Plaintiff Dawson in providing responses and verifications,

19   and the parties exchanged documents and data formally and informally.  Class

20   Counsel took the deposition of Defendant's Person Most Knowledgeable designee

21   and prepared for and defended the deposition of Plaintiff Dawson.  Class Counsel

22   also reviewed and analyzed thousands of pages of documents and data produced by

23   Defendant and obtained through other sources, including and not limited to,

24   Plaintiffs' and other putative class members' employment records (including, *inter*

25   *alia*, time records, earning statements, and personnel records),  job descriptions,

26   class-wide data regarding the number of Class Members, workweeks, pay periods,

27   and terminations during the time period at issue,  Defendant's Code of Conduct,

28   various documents regarding Defendant's wage-and-hour policies (such as, *inter*

**DECLARATION OF EDWIN AIWAZIAN IN SUPPORT OF PLAINTIFF'S MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

**LAWYERS** *for* **JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

*alia*, Meal and Break Periods), various internal memoranda, forms, and notices (such as, Personnel Change Notice, Alcohol Testing Form, New Hire Information, Verification Form for Hitco, Consent/Refusal Form, New Hire Checklist, reimbursement forms, organization charts and organizational structure materials, Hitco Carbon Composites, Inc. Rules for Employees, uniform invoices, Memorandum re Attendance Guidelines, and Dress Code and Other Personal Standards), various agreements (including, *inter alia*, collective bargaining agreements, Declaration of Consent to the Monitoring of the Email and Internet Use, and Employee Confidentiality and Property Agreement, Invention and Trade Secret Agreement), and various training materials (including, *inter alia*, Training Attendance Log, Lamination training – Post Assessment Test, and FOD/FOE Awareness Training Test), among other information and documents. These documents provided Class Counsel with a critical understanding of the nature of the work performed by Class Members and Defendant's written and unwritten policies, practices, and procedures, and were used in analyzing liability and damage issues in connection with all phases of the litigation, and ultimately with the mediation.   These documents provided Class Counsel with a critical understanding of the nature of the work performed by Class Members and Defendant's written and unwritten policies, practices, and procedures, and were used in analyzing liability and damage issues in connection with all phases of the litigation, and ultimately with the mediation.

14.   Additional work performed by Class Counsel included, and was not limited to, the following: drafting and revising the pleadings and the mediation brief; meeting and conferring with defense counsel over jurisdictional issues, as well as issues relating to pleadings and discovery; engaging in extensive motion and *ex parte* practice; and undertaking damages/valuation calculations.

///

///

10

**DECLARATION OF EDWIN AIWAZIAN IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

15.     Counsel for the parties have further invested time researching applicable law, which is constantly evolving as it relates to jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), certification, representative adjudication, off-the-clock theory, meal and rest periods, wage-and-hour enforcement, collective bargaining agreements, Plaintiffs' claims, Defendant's defenses, as well as facts and evidence produced and analyzed.

16.     Subject to Court approval, the parties have reached a settlement for a Gross Settlement Fund of One Million One Hundred Thousand Dollars ($1,100,000) on a non-reversionary basis.

17.     Under the terms of the Settlement, the Net Settlement Fund refers to the amount remaining after deducting the following amounts from the Gross Settlement Fund: (1) Attorneys' Fees not to exceed thirty-five percent (35%) of the Gross Settlement Fund (i.e., $385,000) to Class Counsel; (2) Attorneys' Costs in an amount of up to One Hundred Thousand Dollars ($100,000) to Class Counsel; (3) Enhancement Awards in a combined total of up to Twenty Thousand Dollars ($20,000) (i.e., $14,000 to Plaintiff Dawson and $6,000 to Proposed Plaintiff Sterling); (4) Seven Thousand Five Hundred Dollars ($7,500) to the California Labor and Workforce Development Agency ("LWDA") for its portion of civil penalties under the California Labor Code Attorneys General Act of 2004 (i.e., 75% of $10,000); and (5) Settlement Administration Costs, which are estimated to not exceed Fifteen Thousand Dollars ($15,000).   Under the Settlement, the entire Net Settlement Fund will be distributed to Class Members who do not submit a timely and valid Request for Exclusion ("Settlement Class Members"), and no portion thereof will revert to Defendant.  Assuming that the full amounts allocated by the Settlement are awarded by the Court, the Net Settlement Fund that will be available for distribution to the Settlement Class Members is currently estimated to be Five Hundred Seventy-Two Thousand Five Hundred ($572,500).

///

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

11

18.    The parties have agreed to retain Simpluris, Inc. ("Simpluris" or "Settlement Administrator") to handle the notice and administration process, and respectfully request that this Court appoint Simpluris to serve as the Settlement Administrator.  Simpluris will mail Class Notices to all Class Members and re-mail any returned or undeliverable Class Notices as necessary; and receive, review, and process Requests for Exclusion, Work Shift Disputes, and Objections. Simpluris shall also transmit all required payments (including, *inter alia*, distributing the Individual Settlement Payment checks); provide weekly reports to counsel for the parties; issue necessary W-2, 1099, or other tax forms to Plaintiffs, Settlement Class Members, and Class Counsel; perform necessary tax withholdings and reporting; provide necessary declarations; and perform all other usual and customary duties for administering a class action settlement.   The Settlement Administration Costs are currently estimated not to exceed Fifteen Thousand Dollars ($15,000) and will be paid out of the Gross Settlement Fund subject to approval by the Court.

19.    Simpluris will calculate the estimated gross amount of the Net Settlement Fund that each Class Member may be eligible to receive ("Individual Settlement Share") and each Settlement Class Member's final Individual Settlement Payment, in conformity with the methodology set forth in the Settlement Agreement.

20.    Subject to Court approval and pursuant to Federal Rule of Civil Procedure 23(h), Class Counsel will file a motion for Attorneys' Fees and Costs consisting of attorneys' fees in an amount not to exceed thirty-five percent (35%) of the Gross Settlement Fund (i.e., $385,000), plus reimbursement of litigation costs and expenses in an amount of up to One Hundred Thousand Dollars ($100,000), as provided for by the Settlement Agreement.  The motion will be supported by Class Counsel's declarations, a detailed breakdown of the tasks performed and how much time Class Counsel spent performing the tasks, and a

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

DECLARATION OF EDWIN AIWAZIAN IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

statement of costs incurred to date. Under the terms of the Settlement, these amounts will be paid out of the Gross Settlement Fund subject to approval by the Court.  It should be noted that Class Counsel have borne all of the risks and costs of litigation to date and will not receive any compensation until recovery is obtained.  Class Counsel have committed and continues to commit significant financial and staffing resources to the representation of the Class.  The requested fees and costs will include all of the work that Class Counsel have performed since the inception of this case, as well as all of the work involved in overseeing the Settlement, if approved by the Court, and preparing all necessary paperwork and communicating with all parties to, and third-parties necessary for administration of, the Settlement.

21.    Class Counsel respectfully requests that the Court preliminarily approve the allocation for Enhancement Awards in the combined total of Twenty Thousand Dollars ($20,000), consisting of Fourteen Thousand Hundred Dollars ($14,000) to Plaintiff Dawson and Six Thousand Dollars ($6,000) to Proposed Plaintiff Sterling.   The contemplated Enhancement Awards are fair and appropriate.  Plaintiffs spent a substantial amount of time and effort to produce relevant documents and past employment records, and to provide the facts and evidence necessary to attempt to prove the allegations.  Plaintiffs were available whenever Class Counsel needed them and actively tried to obtain information that would benefit the proposed Class.  For example, Plaintiff Dawson prepared for and attended a full day of deposition, reviewed his deposition transcript thereafter, and provided responses and supplemental responses to formal written discovery propounded by Defendant.  Accordingly, it is appropriate and just for Plaintiffs to receive a reasonable enhancement payment, in addition to their Individual Settlement Payments, for their service on behalf of the Class Members.

///

///

**LAWYERS _for_ JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

**DECLARATION OF EDWIN AIWAZIAN IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

**ESTIMATE OF THE NATURE AND VALUE OF THE CLAIMS**

22.    In reaching the Settlement, the parties have taken into account the information they obtained from Plaintiffs, Class Members, and percipient witnesses, as well as a volume of documents and data, including and not limited to, time and pay records, and Defendant's operations and employment policies, practices, and procedures.   The available information enabled the parties to determine the potential value and strength of the claims, and to estimate the potential claim of each putative class member, in preparation for the mediation. Accordingly, the parties have conducted adequate investigation and discovery to be sufficiently informed of the nature and extent of the Class Members' claims, and to enable both sides to fully evaluate the Settlement for its fairness, adequacy, and reasonableness.   Following the mediation and settlement negotiations, the parties agreed that this case was well-suited for settlement given the legal issues relating to the claims, as well as the costs and risks to both sides that would attend further litigation.   The Settlement takes into account the strengths and weaknesses of each side's position and the uncertainty of how the case might have concluded at certification, trial, and/or appeals.

23.    Plaintiffs allege Defendant failed to properly pay overtime and minimum wages, failed to provide compliant meal and rest periods and associated premiums, failed to timely pay wages upon termination and during employment (Cal. Lab. Code §§ 201 and 202), failed to provide compliant wage statements (Cal. Lab. Code § 226(a)), failed to maintain requisite payroll records, and failed to reimburse necessary business expenses, and thereby engaged in unfair business practices and conduct giving rise to penalties under the California Private Attorneys General Act ("PAGA").   The merits of the principal claims will be addressed separately below.

///

///

14

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

24.     Based on data obtained in this matter and extrapolation thereof, the total number of putative class members during the period from four years prior to the commencement of this action (i.e., August 29, 2012) to approximately October 24, 2018 ("relevant time period") was estimated to be six hundred eleven (611) individuals who were estimated to have worked seventy-six thousand two hundred forty-two (76,242) weeks, and their average hourly rate of pay was estimated to be Seventeen Dollars and Fifty-Four Cents ($17.54).  This Class is currently estimated to consist of approximately six hundred fifty (650) individuals.

## A.   <u>Failure to Pay Overtime and Minimum Wages</u>

25.     Plaintiffs allege Defendant failed to pay overtime and minimum wages.   Plaintiffs contended that Defendant's uniform operations policies, practices, and procedures required its non-exempt employees to perform work during meal and rest periods and before clocking-in and after clocking-out. Plaintiffs contended that Defendant failed to compensate Plaintiffs and putative class members at their applicable minimum and/or overtime rates for such time worked off-the-clock.    Plaintiffs also contended that Defendant utilized an improper rounding policy which was neither fair nor neutral and consistently operated against the putative class members, and automatically deducted time for meal periods regardless of whether a meal period was taken.

26.     California Labor Code section 510 provides that when an employee works more than eight (8) hours in any workday, more than forty (40) hours in any workweek, and/or more than six (6) days in a workweek the employer must pay the employee at least one and one-half times the employee's regular rate of pay for all overtime hours worked.  The employer must pay the employee no less than twice his or her regular rate of pay for hours worked in excess of twelve (12) hours in one day or in excess of eight (8) hours on the seventh consecutive day of work. California Labor Code section 1198 and the applicable Industrial Welfare Commission ("IWC") Wage Order(s) provide that it is unlawful to employ persons

**DECLARATION OF EDWIN AIWAZIAN IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

without compensating them at a rate of pay either time-and-one-half or two-times that person's regular rate of pay, depending on the number of hours worked by the person on a daily or weekly basis.  Employees may be exempt from California overtime regulations due to the nature of the job and their job duties, *see* 49 Code of Federal Regulations section 395.  Also, California Labor Code section 514 limits the application of section 510 to an employee covered by a valid collective bargaining agreement if: (1) it expressly provides for the wages, hours of work and working conditions of the employees and (2) it provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than thirty (30) percent more than the state minimum wage.

27.     California Labor Code section 1197 provides that it is unlawful to pay employees at a rate less than the minimum wage.  California Labor Code sections 1194, 1194.2, 1197, and 1197.1 provide that an employee may seek to recover unlawfully unpaid wages by court action, as well as liquidated damages in an amount equal to the wages unlawfully not paid and interest thereon.  California Labor Code section 1197.1 provides for civil penalties, which, arguably, may only be recovered by the California Labor Commissioner during a one-year statute of limitations period.  However, Plaintiff asserted a cause of action under PAGA which is discussed below.

28.     Defendant contended, *inter alia*, that its overtime policy and practice comply with California law, and that its hourly-paid and non-exempt employees are paid over the California minimum wage for all hours worked.  Defendant also contended that its hourly-paid and non-exempt employees are prohibited from working off-the-clock or working unauthorized overtime, and are instructed not to perform any work before or after clocking-in or clocking-out for their scheduled shifts. Defendant further contended that if Plaintiffs and the other Class Members worked off-the-clock, such work was hidden from Defendant and those employees who actually worked off-the-clock violated the company policies which prohibited

16

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

the performance of work that is off-the-clock.  Defendant produced evidence of what it contended were facially-compliant policies regarding off-the-clock work, as well as wage statements reflecting payment of time-and-a-half and double-time overtime wages to putative class members, as well as overtime wages that take into consideration shift differentials, including, but not limited to, Plaintiffs.  Defendant argued that individual liability issues predominate, including: (a) whether each employee worked off-the-clock; (b) whether Defendant knew or should have known about each employee's off-the-clock work; (c) whether each employee worked in excess of eight (8) hours in a day, forty (40) hours in a week, and/or six (6) days in a workweek; and (d) whether Defendant knew or should have known that each putative class member performed overtime work.  Defendant contended that rounding policy was fair and neutral.  Defendant also contended that hourly-paid and non-exempt employees held different job titles and performed different job duties, and that this would raise highly individualized questions of fact.  Defendant argued that these circumstances would pose challenges to certification and the merits of the claims concerning overtime and minimum wages.    Most importantly, Defendant contended that many putative class members were unionized and that there were valid collective bargaining agreements ("CBA") in place which governed the terms and conditions of the putative class members' employment, including wages, hours, and breaks.  Defendant also contended hat these CBAs set wage rates that exceed the minimum wage in California, and that pursuant to California Labor Code section 514, the requirements of California Labor Code section 510 could not be applied to the putative class members.

29.    Based on information obtained through investigations and obtained from Plaintiffs and other putative class members, as well as a class data and sampling of time and pay data provided by Defendant, Class Counsel created damages/valuation models prior to the mediation.  Based thereon, assuming it could be proven that Defendant failed to pay one (1) hour of overtime wages per

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

1   workweek, the value of the overtime claim was estimated to be $2,005,927.02
2   (76,242 workweeks x 1 hour of overtime wages x overtime hourly rate of $26.31,
3   which is based on the average hourly rate of $17.54).  Assuming it could be proven
4   that Defendant filed to pay one (1) hour of minimum wages every workweek, the
5   value of the minimum  wage claim was estimated to be $1,337,284.68 (76,242
6   workweeks x 1 hour of unpaid minimum wages x average hourly rate of $17.54).

7      30.    However, this assumes an exposure based on the case having been
8   certified and Plaintiffs having proved all elements of the overtime and minimum
9   wage claims, despite certification risks, risks to establishing liability, and
10  significant additional costs that would have to be incurred in order to certify the
11  case and establish liability.  Plaintiffs also faced the risk of the Court finding that
12  individualized issues predominate, which cannot be managed and are not suitable
13  for class treatment.  While Class Counsel disagreed with Defendant's arguments
14  and factual contentions, Class Counsel recognized the realities of the case, due to
15  the risks associated with certification, evidence of facially-compliant policies, the
16  CBAs, costs and expenses of further litigation, and other risks to recovery.  Taking
17  into account these attendant risks and discounting sixty percent (60%) for them, the
18  realistic value of the overtime wage claim was estimated to be $802,370.81 and the
19  realistic value of the minimum wage claim was estimated to be $534,913.87.

20     **B.     Failure to Provide Compliant Meal Periods and Associated**
21          **Premiums**

22     31.    Plaintiffs also contended that Defendant failed to provide timely, full
23  and/or complete meal periods.  Plaintiffs contended, *inter alia*, that Defendant's
24  policies, practices, and procedures forced employees to perform job duties during
25  their meal periods and prevented them from receiving compliant meal periods.
26  Plaintiffs contended that putative class members' meal breaks were often late,
27  short, or missed altogether.  Plaintiffs also contended Defendant had a practice of
28  automatically deducting time for meal periods, regardless of whether they were

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

1   taken and that Defendant had no policy or practice of providing premium pay for
2   all missed, late, short, and/or interrupted meal periods.

3        32.    Under California law, an employer must provide an employee with
4   uninterrupted meal periods of not less than thirty (30) minutes before the employee
5   works more than five (5) hours, except that if the total work period per day of the
6   employee is no more than six (6) hours, the meal period may be waived by mutual
7   consent of both the employer and employee.  Cal. Lab. Code § 512(a).  A second
8   meal period of not less than thirty (30) minutes is required if an employee works
9   more than ten (10) hours per day, except that if the total hours worked is no more
10  than twelve (12) hours, the second meal period may be waived by mutual consent
11  of the employer and employee only if the first meal period was not waived.    Cal.
12  Lab. Code § 512.  An "on-duty" meal period is illegal unless "the nature of the
13  work prevents an employee from being relieved of all duty and when by written
14  agreement between the parties an on-the-job paid meal period is agreed to."  IWC
15  Wage Orders 1 through 15, § 11; IWC Wage Order 16, § 10.  An employer must
16  pay each employee to whom it fails to "provide" a meal period one hour of wages
17  at his or her regular rate of pay "for each work day that the meal or rest period is
18  not provided."  Cal. Lab. Code § 226.7(b).  However, California Labor Code
19  section 512 does not apply to certain types of employees who are covered by a
20  valid collective bargaining agreement if: (1) the collective bargaining agreement
21  expressly provides for the wages hours of work, and working conditions of the
22  employees, (2) it provides for final and binding arbitration of disputes concerning
23  meal periods, overtime wages, and regular wages, and (3) it provides for premium
24  wage rates for all overtime hours worked and a regular hourly rate of pay for those
25  employees of not less than thirty percent (30%) more than the state minimum
26  wage.
27  ///
28  ///

19

**DECLARATION OF EDWIN AIWAZIAN IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

**LAWYERS** *for* **JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

33.     Defendant contended that it had practices, policies, and procedures to provide meal periods every workday to its employees that fully complied with California law, and that employees are instructed not to perform any work during their meal periods.  Defendant also argued that, consistent with *Brinker Restaurant Corporation v. Superior Court* (2012) 53 Cal.4th 1004, it did nothing to impede, discourage, or dissuade employees from taking their meal period, and that it made the meal periods available.  To the extent that putative class members failed to take their meal periods or took a short or late meal period, Defendant contended that they did so voluntarily and that all applicable meal periods were still provided to them.  Thus, Defendant argued that it did not act unlawfully to deprive putative class members of meal periods.  Defendant also contended that there were multiple individual issues that would pose challenges to certification, including and not limited to, (a) whether any meal periods were non-compliant and (b) why they were non-compliant.  Defendant also contended that the putative class members held different job positions and that as a result there was variation to the circumstances that could allegedly cause the employees to be deprived of the opportunity to take legally-compliant, duty-free meal periods, and this variation in circumstances raised highly individualized questions of fact.  Most importantly, Defendant contended that a significant portion of the putative class members were unionized, that there were valid collective bargaining agreements which cover the putative class members and that these CBAs met the requirements of the exception to California Labor Code section 512.

34.     Class Counsel created damages/valuation models prior to the mediation.  Based thereon, assuming that it could be proven that four (4) meal period premiums were due for every workweek during the relevant time period, the value of this claim was estimated to be $5,349,138.72 (76,242 workweeks x 4 meal period premiums x average hourly rate of $17.54).

///

**DECLARATION OF EDWIN AIWAZIAN IN SUPPORT OF PLAINTIFF'S MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

35.     In assessing the value of this claim, Class Counsel considered the risk of further litigating the case, including the significant additional costs that will be incurred by both sides if the case does not settle, as litigating a class action through class certification, trial, and/or appeals is very expensive.   Moreover, litigating meal period claims is inherently difficult as an employer's records, as is the case here, do not usually indicate when a meal period is interrupted.   While Class Counsel disagreed with Defendant's arguments and factual contentions, Class Counsel recognized the realities of the case, applicable case law and regulations, costs and expenses of further litigation and certification, the CBAs, and risks to recovery.  Taking into account these attendant risks and discounting sixty percent (60%) for them, the realistic value of the meal period claim was estimated to be $2,139,655.49.

**C.     Failure to Provide Compliant Rest Periods and Associated Premium Pay**

36.     Plaintiffs' theory of liability was also based on Defendant's alleged failure to provide timely, full, and/or uninterrupted rest periods. Plaintiffs contended that Defendant's expectations, policies, practices, and procedures forced employees to work and perform job duties during their rest periods, and prevented them from receiving compliant rest periods. Plaintiffs also contended that Defendant had no policy of making premium payments for missed, short, late, or interrupted rest periods.

37.     California law requires an employer to provide rest periods to all employees at the rate of ten (10) minutes every four hours of work or major fraction thereof.  Cal. Lab. Code § 226.7.  When an employer fails to provide a complaint rest period, the employer is required to either (a) provide another rest period or (b) pay one additional hour of pay at the regular rate of pay "for each work day that the meal or rest period is not provided." *Augustus v. ABM Security Services, Inc.*  (2016)  2 Cal.5th 257, 271-272; Cal. Lab. Code § 226.7(b).

21

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

However, employees are exempt from the rest break laws if their job duties and responsibilities qualify for one or more of the exemptions under California or federal law.  See, e.g., Cal. Lab. Code § 226.7(e); IWC Wage Order, § 1(A); 49 CFR § 395.

38.    Defendant contended that it had methods, policies, and procedures to provide rest breaks every workday to their employees that fully complied with California law, including and not limited to those in its CBAs.  Defendant also contended that employees were instructed not to perform any work during their rest periods.  Additionally, Defendant produced what it contended was evidence of a facially-compliant rest period policy for its California employees and argued that, consistent with *Brinker*, it did nothing to impede, discourage, or dissuade employees from taking their rest periods, and it authorized and permitted employees to take rest periods.  Defendant further argued that the reasons why a putative class member failed to receive a compliant rest period raised individual issues that could not be certified and that were not manageable.

39.    Based on information obtained through investigations and obtained from Plaintiffs, other putative class members, and Defendant, Class Counsel created damages/valuation models prior to mediation.  Based thereon, assuming that it could be proven that one (1) rest period premium is due for every workweek during the relevant time period, the value of this claim was estimated to be $1,337,284.68 (76,242 workweeks x 1 rest period premium x average hourly rate of $17.54).

40.    In assessing the value of this claim, Class Counsel considered the risk of further litigating the case, as well as significant additional costs that will be incurred by both sides if the case does not settle, as litigating a class action through class certification, trial, and/or appeals is very expensive.  Moreover, litigating rest period claims is inherently difficult as an employer's records, as is the case here, do not usually indicate when a rest period is short, late, interrupted or missed

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

entirely.  While Class Counsel disagreed with Defendant's arguments and factual contentions, Class Counsel recognized the circumstances and realities of the case, applicable case law and regulations, the costs and expense of further litigation and certification, and risks to recovery.  Taking into account these attendant risks and discounting fifty percent (50%) for them, the realistic value of the rest period claim was estimated to be $668,642.34

**D.    Wage Statement Violations**

41.    Plaintiffs also alleged a cause of action under California Labor Code section 226(a).  That section states that an employer must provide an accurate and itemized wage statement twice a month or each time wages are paid, whichever is the more frequent.  Failure to do so entitles employees to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000).  See Cal. Lab. Code § 226(e).  Arguably, actual damages may be sought, under a three-year statute of limitations, or, statutory penalties may be sought, under a one-year statute of limitations.

42.    Based on data provided by Defendant, it was estimated that approximately five hundred eighteen (518) putative class members worked during the one-year statutory limitations period (i.e., from August 29, 2015), and that these putative class members worked a total of four thousand three hundred seventy-six (4,376) pay periods.  Assuming that an injurious wage statement could be proven for each of these putative class members for each of these pay periods, the total value of this claim was estimated to be $437,800([518 initial violations x $50 initial violation penalty] + [(4,376-518) subsequent violations x $100 subsequent violation penalty]).

///

///

**DECLARATION OF EDWIN AIWAZIAN IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

43.     Defendant contended that Plaintiffs and putative class members suffered no actual injury from the alleged wage statement violations.  Defendant also contended that this cause of action is entirely derivative of the foregoing causes of action.  In other words, Plaintiffs would have to prove, for example, that off-the-clock work occurred, that all hours of work had not been recorded, and/or that non-compliant meal and rest periods occurred, that Defendant did not pay premiums, that Defendant did not properly pay for all hours worked, etc., to demonstrate that the wage statements were inaccurate.  Defendant further contended, *inter alia*, that if off-the-clock work occurred and was not reflected in the wage statements, it was because the work was hidden from Defendant; Defendant also contended that no actual injury could be shown.  When assessing the value of this claim, Class Counsel considered these factors, the derivative nature of this cause of action, the chances of prevailing on each of the underlying causes of action, applicable case law and regulations, costs and expenses of further litigation and certification, the circumstances and realities of the case, recent case law, and risks to recovery.   Taking into account these attendant risks and discounting fifty percent (50%) for them, the realistic value of the wage statement claim was estimated to be $218,900.

**E.**     **Waiting-Time Penalties for Failure to Timely Provide Wages During Employment and Upon Termination**

44.     California Labor Code section 204 provides that wages earned by any person in any employment between the 1st and 15th days, inclusive, of any calendar month, other than those wages due upon termination of an employee, are due and payable between the 16th and the 26th day of the month during which the labor was performed.  Further, all wages earned by any person in any employment between the 16th and the last day, inclusive, of any calendar month, are due and payable between the 1st and the 10th day of the following month.

///

24

**LAWYERS** *for* **JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

45.    Plaintiffs alleged that Defendant intentionally and willfully failed to pay Plaintiffs and the putative class members all wages due to them while they were employed by Defendant, within the time period permissible under California law.  These wages included, but were not limited to, overtime and minimum wages and meal and rest period premiums.  However, arguably, this provision of the California Labor Code only states requirements and does not provide for civil penalties or private relief for failure to comply with the requirements stated therein.  Instead, redress may be pursued for the failure to pay wages (which is discussed herein with respect to the claims for failure to pay minimum and overtime wages).

46.    California Labor Code sections 201 and 202 provide that if an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately.  If an employee quits his or her employment, his or her wages shall become due and payable not later than seventy-two (72) hours of quitting, unless the employee has given seventy-two (72) hours of notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting.

47.    California Labor Code section 203 provides that if an employer fails to pay an employee all wages due at termination or within seventy-two (72) hours of resignation, in accordance with sections 201 and 202, then that employee's wages shall continue as a penalty until paid for a period of up to thirty (30) days from the date they were due.  California Labor Code section 203 further provides that the statute of limitations to recover the penalty is the same as the statute of limitations for recovery of the unpaid wages from which the penalties arise, i.e. three years.

48.    Plaintiffs alleged that Defendant intentionally and willfully failed to pay Plaintiffs and putative class members all wages due to them upon termination within the time period permissible under California law.  For example, Plaintiffs alleged that putative class members are entitled to unpaid wage arising from, *inter*

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

*alia*, off-the-clock work, rounding, as well as failure to pay meal and rest period premiums, thereby triggering waiting-time penalties under California Labor Code section 203.

49.   Based on information and data provided by Defendant, it was estimated that approximately five hundred sixty-three (563) putative class members had been terminated during the time period commencing on August 29, 2013.  Assuming that these individuals were not timely paid all wages due to them upon termination, waiting time penalties (calculated at daily pay at the average hourly rate, for an average work day of 8 hours) would potentially be $2,370,004.80 collectively (563 individuals x [30 days x $17.54 average hourly rate of pay x 8 hours]), or approximately $4,209.60 per individual, according to Plaintiffs' calculation.  However, this presumes that Plaintiffs would prevail on the underlying California Labor Code claims, which is necessary to show that Defendant failed to timely pay wages that were due to the putative class members upon termination.

50.   Defendant was adamant that no waiting-time penalties should be awarded.  Defendant pointed out that waiting-time penalties are derivative of each and every other underlying cause of action and contended that it paid the terminated employees all wages due and owing.  Moreover, Defendant emphasized that, under California Labor Code section 203, employers are only obligated to pay waiting-time penalties if they "willfully" fail to pay wages due and owing at the time of termination or resignation.  As Title 8, California Code of Regulations, section 13520 states,

> A willful failure to pay wages within the meaning of [California] Labor Code Section 203 occurs when an employer intentionally fails to pay wages to an employee when those wages are due. However, a good faith dispute that any wages are due will preclude imposition of waiting time penalties under Section 203.

> A "good faith dispute" that any wages are due occurs when an employer presents a defense, based in law or fact, which, if successful, would preclude any recovery

26

on the part of the employee. The fact that a defense is ultimately unsuccessful will not preclude a finding that a good faith dispute did exist. Defenses presented which, under all the circumstances, are unsupported by any evidence, are unreasonable, or are presented in bad faith, will preclude a finding of a "good faith dispute."

51. Accordingly, in assessing the likely recovery of waiting time penalties, Class Counsel took into consideration the chances of prevailing on each of the underlying causes of action, as well as the additional hurdles of prevailing on the claim for waiting-time penalties, including the inherent difficulty in proving the "willful" prong of section 203, recent case law, costs and expenses of further litigation and certification, and risks to recovery. Taking into consideration these attendant risks and discounting eighty percent (80%) for them, the realistic value of the waiting-time penalties claim was estimated to be $474,000.96.

F.     **Failure to Maintain Requisite Payroll Records**

52. Plaintiffs alleged that Defendant had intentionally and willfully failed to keep accurate and complete payroll records showing the hours worked daily by, and the wages paid to, Plaintiffs and the putative class members   Plaintiffs also alleged that Defendant's intentional and willful failure to keep accurate payroll records violated the statutorily-protected right to accurate and complete payroll records, and that Plaintiffs and the putative class members have suffered injury and damage as a result.

53. Pursuant to California Labor Code section 1174(d), an employer shall keep, at a central location in the state or at the plants or establishments at which employees are employed, payroll records showing the hours worked daily by and the wages paid to, and the number of piece-rate units earned by and any applicable piece rate paid to, employees employed at the respective plants or establishments. These records must be kept in accordance with rules established for this purpose by the Labor Commissioner, but in any case, shall be kept on file for not less than three years.  Under California Labor Code section 1174.5, a willful violation of the

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

27

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

employer's recordkeeping obligations set forth in California Labor Code section 1174(d) is subject to a civil penalty of $500.  Arguably, this civil penalty would only be recoverable by the Labor Commissioner, however, Plaintiffs asserts a cause of action under PAGA.  Therefore, the value of this claim is considered as part of the valuation of the PAGA claim contained *infra.*

54.     Defendant contended that Plaintiffs and putative class members suffered no actual injury or damage from the alleged recordkeeping violations.  Moreover, Defendant challenged certification of the recordkeeping issue on the basis that individual liability issues predominated, including (a) whether each putative class member's payroll records were not maintained properly, and (b) whether Defendant's alleged failure to keep requisite payroll records was "willful." Like the wage statement violations, this cause of action is entirely derivative of the causes of action for failure to pay overtime and minimum wages and failure to provide compliant meal or rest periods.

55.     As such, when assessing the value of this claim, Class Counsel took the foregoing factors into account, as well as Defendant's defenses and contentions, the derivative nature of this cause of action, the chances of prevailing on the other causes of action, the inherent difficulty in proving the "willful" prong of California Labor Code section 1174.5, recent case law, costs and expenses of further litigation and certification and risks to recovery, and applied appropriate discounts to the estimated value of this claim for settlement purposes.

### G.     Unreimbursed Business Expenses

56.     Plaintiffs contended that Defendant had failed to reimburse Plaintiffs and putative class members for necessary business expenses, including, but not limited to, the cost of purchasing safety shoes and related items, eye protection, work tools, and uniforms for work-related purposes.

///

///

28

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

57.     California Labor Code section 2802 requires an employer to indemnify its employees for all necessary expenditures made by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer.

58.     Defendant contended that it has a policy and practice of reimbursing employees for necessary business-related expenses.  Thus, any deviation from this policy and practice would require individualized questions of fact.  Defendant also contended that putative class members whose job duties reasonably required them to use tools or wear safety equipment were provided with such tools and equipment by Defendant.  Defendant also contended that, with respect to the alleged expenses for which Plaintiffs and putative class members never requested reimbursement from Defendant, it did not know and had no reason to know that they incurred the alleged business-related expenses.  Defendant produced what it contended was evidence that Defendant had an annual allowance for safety shoes and insoles, that eye protection was provided once a year, and that Defendant provided uniforms consisting of a shirt, jacket, and pants.  Defendant further contended that the reason for why a putative class member was required to undertake certain expenses, while not others, and failed to receive reimbursement for certain expenses while not others, would raise individual issues would pose challenges to certification and manageability.

59.     Defendant also contended that the California Labor Code only requires reimbursement of "necessary" expenses—as opposed to any expense that is incurred in the course of performing work—and argued that distinguishing a necessary expense from an unnecessary one would require individualized inquiry. *See* Cal. Lab. Code § 2802; *Gattuso v. Harte-Hanks Shoppers, Inc.* (2007) 42 Cal. 4th 554.  Furthermore, whether or not an expense was necessary, would depend, in part, on the reasonableness of the employee's choice, and whether or not an expense was incurred, would have to be established by way of extensive individual

factual inquiry and/or statistical evidence. *Cochran v. Schwan's Home Services, Inc*. (2014) 228 Cal. App. 4th 1137.

60.     If Plaintiffs proved that Defendant willfully failed to reimburse necessary business-related expenses for each of the six hundred elevan (611) putative class members in the amount of Four Dollars ($4.00) per workweek during the relevant time period, the value of this claim would be $304,968 (76,242 workweeks x $4 business expenses).   Additionally, Class Counsel took into consideration the additional cost attendant to, and risk of, establishing that expenses were incurred, that the nature of the expenses were such that Defendant was required to reimburse them, and that Defendant failed to reimburse them on a class-wide basis.  While Class Counsel disagreed with Defendant's arguments and factual contentions, Class Counsel considered Defendant's arguments, applicable case law and regulations, the costs and expenses of further litigation and certification and risks to recovery.  Taking into account these attendant risks and discounting eighty percent (80%) for them, the realistic value of this claim was estimated o be $60,993.60

### H.    Unfair Business Practices

61.     Plaintiffs pleaded this cause of action in order to augment their other causes of action and aid in their prosecution.  California's Unfair Competition Law, Business and Professions sections 17200, et seq. ("UCL") prohibits any "unlawful, unfair or fraudulent business practices."  A violation of the UCL may be predicated on the violation of any state or federal law.

62.     Arguably, California Business and Professions Code section 17208 extends the statute of limitations on Plaintiffs' other claims, which qualify as unfair business practices, to four (4) years rather than the three (3) years provided by statute.   However, claims brought under the UCL are equitable actions for injunctive or restitutionary relief, and a court may take into consideration equitable defenses when fashioning equitable remedies.   Restitution under the UCL is

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

1    limited to returning to the plaintiff monies unlawfully withheld, such as unpaid

2    wages or unpaid meal or rest period premiums, or restitutionary disgorgement.

3         63.   Plaintiffs alleged that each of Defendant's alleged violations of the

4    California Labor Code (for which other causes of action were asserted) constitutes

5    business practices that are either unlawful (i.e., is forbidden by law) and/or unfair

6    (i.e., harm to victim outweighs any benefit).  In order to prevail on the UCL cause

7    of action, Plaintiffs would have to prove that Defendant violated the predicate

8    provisions of California law, and that the violations constitute unlawful and/or

9    unfair business acts and practices in violation of California Business and

10   Professions Code sections 17200, *et seq.*  Plaintiffs would have to prove that

11   Defendant's conduct throughout the time period at issue has been unfair, unlawful,

12   harmful, and injurious to Plaintiffs and the putative class members.  With respect

13   to the UCL's standing requirement, Plaintiffs would also have to prove that they

14   have suffered an economic injury as a result of Defendant's conduct.

15        64.   As discussed above, Defendant vigorously challenged the likelihood

16   of Plaintiffs' success in establishing that any of provisions of the California Labor

17   Code, on which the UCL claim is predicated, were violated and that such

18   violations were injurious.  Throughout this litigation, Defendant also relentlessly

19   challenged Plaintiffs' standing and adequacy to assert class claims, and contended

20   there were individualized issues that would pose challenges to certification.  When

21   assessing the likelihood of prevailing on this cause of action, Class Counsel

22   considered all of the above, the factual contentions and legal arguments that

23   Defendant asserted to each of the underlying California Labor Code violations, the

24   derivative nature of this cause of action, and the chances of prevailing on the other

25   causes of action, and applied appropriate discounts for settlement purposes.

26   ///

27   ///

28   ///

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

31

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

## I.   **PAGA Penalties**

65.   Under the PAGA, civil penalties to be assessed and collected by the state labor agency for a violation of the California Labor Code, may, as an alternative, be recovered by an aggrieved employee plaintiff.  If the California Labor Code already specifies and provides a civil penalty for the violation of a provision of the  California Labor Code, said civil penalty is recoverable by the aggrieved employee plaintiff.  Additionally, the PAGA statute establishes a civil penalty that is recoverable by an aggrieved employee plaintiff, for violation of provisions of the California Labor Code for which the California Labor Code does not specifically provide for a civil penalty, as follows: one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation.  Cal. Lab. Code § 2699(f).   Pursuant to California Labor Code section 2699(i), seventy-five percent (75%) of the penalties recovered must be allocated to the LWDA, with the remaining twenty-five percent (25%) allocated to the aggrieved employees.  The statute of limitations period applicable to such penalties is one year prior to the filing of the complaint.  Cal. Code Civ. Proc. § 340.

66.   Defendant contended that violations of multiple provisions of the California Labor Code do not give rise to cumulative penalties, but that instead, the initial violation penalty and subsequent violation penalty provided by the PAGA statute, should only apply once per pay period, if at all, rather than cumulatively for each separate California Labor Code provision that is arguably, violated during a pay period.

67.   Defendant contended that an important feature of the PAGA statute is that, when determining whether or not to assess a penalty, the court exercises the same discretion that the LWDA has and may reduce the penalties to be assessed against the employer pursuant to section 2699(e)(1)-(2).  As such, Defendant

32

contended that, with respect to a PAGA claim, the Court was unlikely to assess cumulative penalties for the maximum number of possible, separate California Labor Code violations, because it would be unjust, arbitrary, oppressive, and/or confiscatory, especially where certain conduct may be regulated by multiple provisions of the California Labor Code that are interrelated and work in tandem.

68.  Defendant also maintained and continues to maintain that it had legally-compliant employment policies and practices throughout the statutory period.  Defendant denied and continue to deny that it ever violated any provision of the California Labor Code and argued, that, even if, *arguendo*, such violations occurred, Defendant contended that it will not be treated as having engaged in subsequent violations giving rise to heightened penalties.  In other words, Defendant argued that heightened civil penalties for subsequent violations would not be assessed unless it could be shown that Defendant had notice that it was violating the law, e.g. because it had been cited by a labor agency or adjudged by a court to have done so.  See, e.g., *Amaral v. Cintas Corp. No. 2* (2008) 163 Cal.4th 1157, 1209. Defendant argued that it would be able to show a lack of willfulness in the violations, such that the alleged California Labor Code violations would not be considered "willful."  Defendant contended that, at best, even if a violation giving rise to a penalty was shown for each pay period, only the lower civil penalty associated with initial violations would apply.

69.  Importantly, to prevail on the PAGA claim, Defendant contended that some courts have required plaintiffs to show at the outset that they have suffered injury, in order to establish standing, and that Plaintiff Sterling would also have to prove all requisite elements to prove violations of the underlying California Labor Code provisions, in order to show that Defendant's conduct gave rise to penalties The overtime and meal and rest period allegations are fundamental to this action; however, for the reasons discussed above, there were substantial challenges to showing liability and exposure for these claims.  Defendant argued that Plaintiff

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

33

1  Sterling would not be able to establish violations of the underlying California
2  Labor Code provisions and the fundamental allegations regarding overtime and
3  meal and rest periods.  Defendant also contended that multiple individualized
4  issues vitiated the manageability of representative adjudication of PAGA penalties.

5        70.    Defendant would also likely seek bifurcation of discovery and/or trial
6  of the PAGA claim – at the time, multiple courts had taken such an approach.

7        71.    Defendant also maintained that, in addition to its strong arguments
8  against the underlying claims, taking the current unsettled state of law, it would be
9  unjust to award the maximum potential PAGA penalties.  There was a dearth of
10 law and guidance regarding trials and/or assessment of penalties under the PAGA
11 statute, and there is no clearly-established methodology for the valuation and/or
12 assessment of PAGA penalties.

13       72.    Defendant also contended that before a PAGA claim could be tried,
14 under existing law, the court of law would have to be satisfied that the adjudication
15 of the PAGA claim, based on a theory of uniform wage and hour practices relating
16 to a large group of aggrieved employees, is sufficiently "manageable" so as not to
17 interfere with Defendant's right to due process.  Defendant asserted that the
18 putative class members worked different positions, and that their job roles, job
19 duties, and work hours varied.  Defendant contended that there was variation as to
20 the circumstances that could allegedly cause the employees to work overtime, or to
21 be deprived of the opportunity to take legally-compliant, duty-free meal and/or rest
22 periods.  Defendant further contended that these issues presented challenges to
23 Plaintiff Sterling's ability to show that a PAGA claim could be efficiently and
24 manageably adjudicated without abridging Defendant's due process rights.

25       73.    Defendant pointed to case law that held that, given the derivative
26 nature of a PAGA claim, it would stand or fall based on the claims from which it
27 derives, and the success of showing, *inter alia,* off-the-clock work, failure to
28 properly pay wages, failure to reimburse for expenses, etc.  Defendant also pointed

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

34

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

1   to case law demonstrating that courts have attributed little separate value to PAGA

2   claims, for example, allowing them to be resolved for $0 where the other

3   underlying California Labor Code claims are being resolved.  See, e.g. *Matter of*

4   *Nordstrom Commission Cases* (2010) 186 Cal.App.4th 576, 588-590 (No abuse of

5   discretion by the trial court in approving the allocation of $0 toward PAGA

6   penalties, where PAGA claim is resolved as a part of an overall resolution of the

7   underlying California Labor Code violations); *Franco v. Ruiz Food Prods, Inc.*

8   (E.D. Cal. Nov. 27, 2012) No. 1:10-cv-02354-SKO, 2012 WL 5941801, at *14

9   (Approving allocation of $10,000, out of the settlement of $2.5 million, toward the

10  settlement of the PAGA claim); *Garcia v. Gordon Trucking* (E.D. Cal. Oct. 31,

11  2012) No.1:10-CV-0324-AWI-SKO, 2012 WL 5364575, at *3 (Approving the

12  allocation of $10,000, out of the settlement of $3.7 million, toward the settlement

13  of the PAGA claim); *Chu v. Wells Fargo Investments, LLC* (N.D. Cal. Feb. 16,

14  2011) No. C 05-4526 MHP, C 0647924 MHP, 2011 WL 672645, at *1 (Approving

15  the allocation of $10,000, out of the settlement of $6.9 million, toward the

16  settlement of the PAGA claim); *Jack v. Hartford Ins. Co.* (S.D. Cal. Oct. 13, 2011)

17  No. 3:09-cv-1683—MMA (JMA), 2011 WL 4899942, at *18 (Approving the

18  allocation of $3,000, out of the settlement of $1.2 million, toward the settlement of

19  the PAGA claim); *Schiller v. David's Bridal, Inc.* (E.D. Cal. June 11, 2012) 2012

20  WL 2117001, at *14 (approving the allocation of $10,000, out of the settlement of

21  $518,245, toward settlement of the PAGA claim).

22      74.     Assuming that a court would be satisfied that the PAGA claim was

23  susceptible to being efficiently tried and adjudicated on a representative basis, and

24  assuming that it could be shown that civil penalties in the amount of Five Hundred

25  Dollars ($500) are owed for each of the five hundred eighteen (518) aggrieved

26  employees who were estimated to have worked during the one-year statutory

27  period (i.e., from August 29, 2015), the PAGA penalties at issue, which the Court

28

35

1    could determine whether or not to assess and whether or not to reduce, were

2    estimated to be approximately $259,000 (518 individuals x $500 civil penalties).

3        75.    Class Counsel recognized the realities of Defendant's arguments,

4    evidence and information obtained through investigations as well as from

5    Defendant, the circumstances and realties of the case, the current state of the law,

6    the costs of continued litigation, and the other risks to recovery.   Taking into

7    account these attendant risks and discounting eighty percent (80%) for them, the

8    value of the PAGA claim was estimated to be $51,800.

9        **H.    <u>Summary</u>**

10       76.    The Parties settled this case for a Gross Settlement Fund of

11   $1,100,000.  As set forth above, the maximum potential value of Plaintiffs' claims

12   was estimated to be $13,401,407.90 Taking into account the risks and expenses

13   associated with obtaining and maintaining class certification and establishing

14   liability and the risk of the Court finding that individualized issues predominate

15   and that the action is not suitable for class treatment, as well as the realities of the

16   case, applicable case law, the CBAs, and other attendant risks and discounting for

17   them, the realistic value of the claims was estimated to be $4,951,277.07.

18       77.    The foregoing discussion confirms that the amount of the Settlement

19   is adequate in light of the merits of this case, the legal basis for each of Plaintiffs'

20   allegations and causes of action, the evidence at issue with respect to those

21   allegations and causes of action, and the legal and factual arguments and

22   circumstances which pose challenges to monetary recovery.  The conclusion to be

23   drawn from the foregoing analysis is that neither class certification, liability, nor

24   the ability to adjudicate and/or recover monetary relief on a class-wide or

25   representative basis is clear-cut, which is why the parties elected to settle this

26   matter.   Class Counsel applied appropriate discounts in light of the defenses

27   asserted, evidence produced, and circumstances in this case which posed risks to

28   certification of a class, manageability of representative adjudication, and monetary

*LAWYERS for JUSTICE, PC*
410 West Arden Avenue, Suite 203
Glendale, California 91203

36

**DECLARATION OF EDWIN AIWAZIAN IN SUPPORT OF PLAINTIFF'S MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

1  recovery.    This Settlement resolves dispute claims and, like most others, is the

2  product of compromise.

3       78.    Class Counsel submit that the Settlement presented for preliminary

4  approval is within a reasonable range of recoveries for this type of litigation, and is

5  fair, reasonable, and adequate, and in the best interest of the Class Members and

6  the State of California.

7       I declare under penalty of perjury under the laws of the State of California

8  that the foregoing is true and correct.

9       Executed on this 30th day of April 2019, at Glendale, California.

10

11       _____

12             Edwin Aiwazian

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

37

# EXHIBIT 1

**LAWYERS for JUSTICE, PC**
Edwin Aiwazian, Esq. (SBN 232943)
   Email: edwin@lfjpc.com
Arby Aiwazian, Esq. (SBN 269827)
   Email: arby@lfjpc.com
Joanna Ghosh, Esq. (SBN 272479)
   Email: joanna@lfjpc.com
410 West Arden Ave., Ste. 203
Glendale, CA 91203
Telephone:  818.265.1020 / Facsimile: 818.265.1021

**GIRARDI | KEESE**
V. Andre Sherman, Esq. (SBN 198684)
   Email: asherman@girardikeese.com
1126 Wilshire Boulevard
Los Angeles, CA 90017
Telephone:  213.977.0211 / Facsimile: 213.481.1554

Attorneys for Plaintiff ANDREW DAWSON

**MCGUIREWOODS LLP**
Matthew C. Kane, Esq. (SBN 171829)
   Email:  mkane@mcguirewoods.com
Sabrina A. Beldner, Esq. (SBN 221918)
   Email:  sbeldner@mcguirewoods.com
Sylvia J. Kim, Esq. (SBN 258363)
   Email:  skim@mcguirewoods.com
1800 Century Park East, 8th Floor
Los Angeles, CA  90067-1501
Telephone:  310.315.8200 / Facsimile:  310.315.8210

Attorneys for Defendant HITCO CARBON COMPOSITES, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW DAWSON, individually, and on behalf of other members of the general public similarly situated, | CASE NO. 2:16-cv-07337-PSG-FFM |
| | Hon. Philip S. Gutierrez |
| Plaintiff, | **STIPULATION FOR:** |
| vs. | **(1)  LEAVE TO FILE THIRD AMENDED CLASS ACTION COMPLAINT** |
| HITCO CARBON COMPOSITES, INC., an unknown business entity; and DOES 1 through 100, inclusive, | **(2)  SETTLEMENT AND RELEASE OF CLASS ACTION AND PAGA CLAIMS** |
| Defendants. | |

1

## STIPULATION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT AND SETTLEMENT AND RELEASE OF CLASS ACTION AND PAGA CLAIMS

This Stipulation for Leave to File Third Amended Complaint and Settlement and Release of Class Action and PAGA Claims ("Settlement Agreement" or "Agreement") is made and entered into by and between HITCO Carbon Composites, Inc. ("Defendant"), on the one hand, and Plaintiff Andrew Dawson ("Plaintiff Dawson") and Proposed Plaintiff Darryl Sterling ("Plaintiff Sterling") (collectively, "Plaintiffs" or "Class Representatives"), on their own behalf and as proposed representatives on behalf of the Class to be certified pursuant to this Settlement Agreement (as described in Paragraph 6, below) and each of the members of that Class (each, individually, a "Class Member" and, collectively, "Class Members"), on the other hand, in *Dawson vs. HITCO Carbon Composites, Inc.,* (United States District Court for the Central District of California, Case No. 2:16-cv-07337-PSG-FFM) (the "Litigation").  This Settlement Agreement pertains to all claims that have been and/or are asserted in all pleadings that have been filed in the Litigation, including without limitation the Third Amended Complaint ("TAC") the Parties are stipulating to be filed pursuant to and for purposes of this Settlement Agreement, and all violations asserted in any notice sent to the California Labor and Workforce Development Agency ("LWDA") referenced in any such pleadings.  This Settlement Agreement is subject to the terms and conditions hereof and the approval of the Court.  For purposes of this Settlement Agreement, Plaintiffs and Defendant are each referred to individually as a "Party" and collectively as the "Parties."

## SETTLEMENT AMOUNT

As described in detail hereafter, and pursuant to all of the terms and conditions set forth hereafter, Defendant will pay the total amount of One Million One Hundred Thousand Dollars ($1,100,000.00) (the "Gross Settlement Fund," "GSF," or "Settlement Fund"), to resolve all of the claims being released herein, as set forth in detail hereafter.  This Settlement Agreement is not subject to any reversion of funds

to the Defendant, such that the entire settlement amount will be payable if the settlement becomes final as defined herein.

## **BACKGROUND AND RECITALS**

1.  On August 29, 2016, Plaintiff Dawson filed Class Action Complaint for Damages ("Original Complaint") thereby commencing a putative class action against HITCO in the Superior Court of the State of California, County of Los Angeles, assigned Case No. BC 632212 (the "State Court Action").  On September 29, 2016, HITCO removed the State Court Action to the United States District Court for the Central District of California (the "Court"), where it was assigned Case No. 2:16-cv-07337, and then assigned to the Hon. Philip. S. Gutierrez, United States District Judge.

2.  On February 21, 2017, Plaintiff Dawson filed the First Amended Class Action Complaint for Damages ("First Amended Complaint" or "FAC") in the Litigation.

3.  On June 5, 2017, Plaintiff Dawson filed the Second Amended Class Action Complaint for Damages ("Second Amended Complaint" or "SAC") in the Litigation.

4.  The Parties engaged in extensive motion practice, formal discovery, and informal exchanges of documents and information, including, *inter alia*, data regarding putative class members.

5.  On October 24, 2018, the Parties participated in a private mediation with Mediator Louis M. Marlin, Esq.  As a result of the mediation, the Parties have prepared and are entering into this Settlement Agreement to resolve all of the claims being released herein.

6.  For purposes of this Settlement Agreement only, the "Class" consists of all non-exempt, hourly-paid employees employed by HITCO and working in the State of California at any time during the time period of August 29, 2012 through and including the date of preliminary approval by the Court of this Settlement

Agreement (the "Settlement Class Period"), and expressly excluding therefrom any such individual who, as of the date the Court grants preliminary approval of this Settlement Agreement, has filed a pending, separate lawsuit as a named plaintiff, individually and/or as a putative class or representative action, asserting the same or similar claims to those alleged in the Litigation and/or has released such claims.

7.      No Admission of Liability by the Defendant.   Defendant denies any liability or wrongdoing of any kind associated with the Litigation and the claims being released herein.  Defendant contends, among other things, that it has complied at all times with all applicable California laws and asserts that the Class Members were properly compensated for all time worked, and otherwise treated at all times in compliance with California law. Neither this Settlement Agreement nor any exhibit hereto, nor any other document pertaining to the settlement contemplated herein, may be offered in any other case or proceeding as evidence of any admission by Defendant of any liability on any claims for damages or other relief.  Any stipulation or admission by Defendant contained herein is made for settlement purposes only.

8.      Nevertheless, in the interest of avoiding the costs and disruption of ongoing litigation and resolving the claims asserted in the Litigation, Defendant believes that the settlement negotiated between the Parties and set forth in this Settlement Agreement is fair, reasonable, and adequate.

9.      It is the desire of Plaintiffs, on their own behalves and on behalf of the Settlement Class Members, as well as on behalf of the LWDA with respect to those claims asserted under the California Labor Code Private Attorney General Act ("PAGA"), to fully, finally, and forever settle, compromise, and discharge the claims set forth in Paragraphs 34 and 35 of this Settlement Agreement.

## TERMS OF THE SETTLEMENT

10.      Conditional Leave to File Third Amended Class Action Complaint:  For the purposes of this Settlement Agreement only, the Parties hereby stipulate and agree, subject to the Court's entry of an order approving the same, that leave to file

4

the proposed Third Amended Class Action Complaint for Damages and Enforcement Under the Private Attorneys General Act, California Labor Code § 2698, Et Seq. ("Third Amended Complaint" or "TAC") attached hereto as **"Exhibit A"** be granted, which adds proposed Plaintiff Sterling as an additional named plaintiff in the Litigation and which includes additional factual allegations and claims discovered during the course of the Litigation, solely in connection with the Court granting preliminary and final approval of this Settlement Agreement. For purposes of this Settlement only, the TAC shall relate back to the date of the filing of Plaintiff Dawson's Original Complaint, with Defendant's currently operative Answer to the SAC being deemed to be its Answer to the TAC. Should, for whatever reason, the settlement set forth in this Settlement Agreement not become final, the TAC shall be deemed stricken, null and void *ab initio*, with the previously-filed SAC in the Litigation remaining the operative pleading.

11. <u>Amended PAGA Notice Letter</u>: For the purposes of this Settlement Agreement only, Proposed Plaintiff Sterling has submitted the amended PAGA notice letter to the LWDA attached hereto as **"Exhibit B,"** which the Parties hereby stipulate and agree relates back to the earliest such notice submitted by Proposed Plaintiff Sterling to the LWDA as referenced in the TAC. Should, for whatever reason, the settlement set forth in this Settlement Agreement not become final, the amended PAGA notice letter shall be deemed null and void *ab initio*, with all defenses to the previously-submitted PAGA notice letter fully and expressly reserved by Defendant.

12. <u>Stipulation for Conditional Class Certification</u>: The Parties stipulate and agree to the conditional certification of the Settlement Class in the Litigation for purposes of this Settlement Agreement only. Should, for whatever reason, the settlement set forth in this Settlement Agreement not become final, the Parties' stipulation to such class certification as part of this settlement shall become null and void *ab initio* and shall have no bearing on, and shall not be admissible in connection

with, the issue of whether or not certification would be appropriate in a non-settlement context. Defendant expressly reserves its rights and declares that, to the extent Plaintiffs may otherwise be permitted to seek class certification, it intends to oppose class certification vigorously should this settlement not become final and putative class action claims are allowed to be pursued in the Litigation or any other action or proceeding.

13.   <u>Establishment of the Settlement Fund</u>: This settlement is being made on a non-reversionary basis, such that Defendant will pay the entirety of the agreed upon total settlement amount of One Million One Hundred Thousand Dollars ($1,100,000.00) (i.e., the Settlement Fund).

14.   The payment by Defendant of the total Settlement Fund of $1,100,000.00, pursuant to this Settlement Agreement, shall settle and forever resolve all of the Released Claims, and will include all payments to Settlement Class Members and government taxing authorities, plus (a) the costs of administration of the settlement, (b) all claimed and/or awarded attorneys' fees and costs, (c) all claimed and/or awarded enhancement awards to the Class Representatives, and (d) the payment to the LWDA pursuant to the PAGA. Specifically included in what is to be paid from the Settlement Fund are Defendant's obligations for all types of employer-side payroll taxes which may be owed as a result of the payments to be made to Settlement Class Members as set forth in this Settlement Agreement, and no additional funding or payment by Defendant will be required for any such obligations. The settlement payments are not being made for any other purpose and will not be construed as "compensation" for purposes of determining eligibility for any health and welfare benefits, unemployment compensation or other compensation or benefits provided by Defendant. In addition, no individual receiving a payment based on this Settlement shall be entitled to any additional or increased health, welfare, retirement or other benefits as a result of their participation in the Settlement and/or receipt of payment under this Settlement.

15.   <u>Calculation of Net Settlement Fund</u>:   The total sum from which Settlement Class Members will be paid (the "Net Settlement Fund" or "NSF") shall be the Gross Settlement Fund less the following: Settlement Administration Costs, LWDA Payment, Attorneys' Fees and Costs, and Enhancement Awards.   The remaining sum after all these deductions shall represent the NSF, which will be used to calculate the settlement share that each Settlement Class Member will receive if this settlement becomes Final as defined in Paragraph 16, below.

16.   <u>Effective Date</u>:   This Settlement Agreement shall become effective when the settlement is considered to be Final.   For purposes of this Settlement Agreement, "Final Approval" means the Court's determination that the Settlement is fair, reasonable, and adequate, granting of final approval of the Settlement, and entry of judgment or dismissal based thereon, and "Final Approval Order" means the Court's order determining the Settlement to be fair, reasonable, and adequate and granting final approval of the Settlement and judgment or dismissal based thereon. For purposes of this Settlement Agreement, "Effective Date" and "Final" mean: (i) in the event that the Settlement has received Final Approval by the Court, and regardless of whether any timely objections thereto have been filed or withdrawn, then upon the passage of the applicable date for any interested party to seek appellate review of the Court's Final Approval Order without a timely appeal being filed; or, (ii) in the event that a timely appeal of the Court's Final Approval Order has been filed, then the Settlement Agreement shall be final when the applicable appellate court has rendered a final decision or opinion affirming the Court's Final Approval Order without material modification, and the applicable date for seeking further appellate review has passed without further appellate review being sought.   In the event that the Court fails to approve the Settlement, or if the appropriate appellate court fails to approve the Settlement: (1) this Settlement Agreement shall have no force and effect and the Parties shall be restored to their respective positions prior to entering into it, and no Party shall be bound by any of the terms of the Settlement

7

Agreement; (2) Defendant shall have no obligation to make any payments to the LWDA, Class Members, Plaintiff Dawson, Proposed Plaintiff Sterling, or Plaintiffs' Counsel; and (3) any preliminary approval order and/or Final Approval Order shall be vacated.

17.   <u>Mediation and Settlement Communications</u>:  The Settlement Agreement and all negotiations, statements, proceedings and data relating thereto shall be deemed confidential mediation settlement communications and not subject to disclosure for any purpose in any proceeding, except only as required to obtain approval of and implement the Settlement in this Litigation and/or to enforce the Settlement.

18.   <u>PAGA</u>:   The amount of Ten Thousand Dollars ($10,000) out of the GSF shall be allocated to penalties under PAGA ("PAGA Amount"), subject to the Court's final approval, of which 75% of that amount will be paid to the LWDA out of the GSF ("LWDA Payment"), and the remaining 25% will become part of the NSF for distribution to Settlement Class Members.

19.   <u>Attorneys' Fees and Costs</u>:  "Class Counsel" or "Plaintiffs' Counsel" means Edwin Aiwazian, Esq., Arby Aiwazian, Esq., and Joanna Ghosh, Esq. of LAWYERS FOR JUSTICE, PC and V. Andre Sherman, Esq. of GIRARDI | KEESE. Subject to approval of the Court, Plaintiffs' Counsel shall be appointed as counsel for the Class, and may apply for an award of attorneys' fees and costs and expenses incurred in connection with the prosecution of this matter, and all of the work remaining to be performed by Class Counsel in documenting the Settlement, securing Court approval of the Settlement (including all related appellate work), carrying out their duties to see that the Settlement is fairly administered and implemented, and obtaining dismissal of the action, in an amount of up to thirty-five percent (35%) of the GSF for attorneys' fees and in an amount of up to $100,000 for reimbursement of reasonable costs and expenses (together, "Attorneys' Fees and Costs").  Amounts awarded by the Court for Attorneys' Fees and Costs shall be paid

from the GSF.

20.  Enhancement Awards:  Subject to approval by the Court, Plaintiff Dawson and Proposed Plaintiff Sterling shall be appointed as representatives of the Class, and they may seek awards in the amount of up to $14,000.00 to Plaintiff Dawson and in the amount of up to $6,000.00 to Proposed Plaintiff Sterling in consideration for serving as representatives of the Class ("Enhancement Award(s)"). The Enhancement Awards are in addition to the Individual Settlement Payments to which Class Representatives are otherwise entitled along with all other Settlement Class Members.  Class Representatives hereby understand and agree that they are not eligible for future employment with Defendant or any of the Released Parties (as defined below), that they will not seek or apply for any such employment, that Defendant and the Released Parties are under no obligation and can decline to hire Class Representatives if either of them apply for or seek such employment, and Defendant and the Released Parties can terminate Class Representatives' employment sought and obtained in violation of the foregoing without obtaining Defendant's written consent.

21.  In the event lesser sums are awarded for Attorneys' Fees and Costs referenced above in Paragraph 19, above, or for Enhancement Awards referenced in Paragraph 20, above, the approval by the Court of any such lesser sum(s) shall not be grounds for Plaintiffs and/or Class Counsel to terminate the Settlement, but such an order shall be appealable by them.  In the event that such an appeal is filed, administration of the Settlement shall be stayed pending resolution of the appeal. Thereafter, if after the exhaustion of such appellate review, any additional amounts remain which are distributable to the Settlement Class Members, the cost of administration of such additional payments will be paid out of such additional amounts, and will not be chargeable to or payable by Defendant.  Any amount not awarded for Attorneys' Fees and Costs or Enhancement Awards, but which is not challenged via appeal by Plaintiffs and/or Class Counsel, shall be added to the NSF

9

and distributed to the Settlement Class Members in accordance with the terms of this Settlement Agreement.

22.   <u>Costs of Administration</u>:   Subject to Court approval, the Parties designate Simpluris, Inc. to administer the Settlement ("Settlement Administrator" or "Simpluris"), with a budget to administer the settlement for fees and costs of up to $15,000.00 ("Settlement Administration Costs").   The Settlement Administrator's duties of administration shall include, without limitation, receiving the Class List to be produced by Defendant, and updating it prior to the Notice being mailed, printing and mailing the Notice, performing necessary additional skip traces on Notices and/or checks returned as undeliverable, calculating Class Members' estimated and final shares of the NSF, preparing and mailing of settlement checks, establishing a settlement website as described hereafter, responding to Class Member inquiries as appropriate, preparing any appropriate tax forms in connection with the settlement payments and remitting those forms and any required payments to the appropriate governmental agencies, and generally performing all normal and customary duties associated with the administration of such settlements.   The Settlement Administrator and Defendant will be required to cooperate and coordinate with each other with respect to the calculation, reporting and payment of all payroll taxes and withholdings in accordance with all applicable laws and requirements of government taxing authorities.   All fees and costs for the Settlement Administrator's services will be paid out of the GSF.   The Settlement Administrator will coordinate the calculations of the payroll taxes and deductions with Defendant to ensure that, to the extent such taxes and deductions are or could be deemed to have been made by the Settlement Administrator on behalf of Defendant by government taxing authorities, they are made in compliance with Defendant's respective tax withholding and remittance obligations for such payments.

///

///

23.   <u>No Claim Form Required</u>:  Settlement Class Members shall share in the NSF referred to in Paragraph 15, as set forth in more detail in Paragraph 25 hereafter. Settlement Class Members shall not be required to complete a claim form.  Class Members will be mailed a Notice of Class Action Settlement ("**Notice**"), in substantially the form attached hereto as "**Exhibit C**," subject to approval by the Court, informing them of the terms of the Settlement and providing them with an estimate of their share of the NSF.  Class Members who do not timely and properly elect to opt out of the Settlement ("**Settlement Class Member(s)**") will be mailed a check representing their payment under the Settlement, in accordance with the terms of this Settlement Agreement.  Each Individual Settlement Payment check will contain language in substantially the following form: "I understand that by cashing, depositing, or otherwise negotiating this check I will be deemed to have opted into *Dawson v. HITCO Carbon Composites, Inc.* (Case No. 2:16-cv-07337) for purposes of the federal Fair Labor Standards Act (FLSA) to the extent required to do so under applicable law for purposes of the court-approved settlement therein."

24.   <u>Class Size</u>:  The size and membership of the Class shall be determined as of the date the Court grants preliminary approval of the settlement.  As of October 24, 2018, it is estimated that the Class is comprised of 650 individuals (the "Projected Class Size") who will have worked 450,000 Work Shifts (the "Projected Work Shifts").  If, as of February 25, 2019, the actual class size and number of Work Shifts of the Class are both 10% higher than the Projected Class Size and Projected Work Shifts, respectively (i.e., over 715 individuals [the "Buffer Class Size"] and 495,000 Work Shifts [the "Buffer Work Shifts"]), then within ten (10) court days after learning that both have been so exceeded:

a.   Defendant may agree to proceed with the Settlement by increasing the GSF by an amount calculated by dividing the GSF by the Buffer Work Shifts, and then multiplying that quotient by the number of actual work shifts as of February 25, 2019 that are in excess of the Buffer Work Shifts amount;

b.      In the absence of Defendant agreeing to increase the GSF as stated in Paragraph 24(a), then either Defendant or Plaintiffs may terminate the Settlement with the Parties returned to their pre-settlement positions in the Litigation; or

c.      In the absence of Defendant agreeing to increase the GSF as stated in Paragraph 24(a), the Parties may agree, subject to the Court's approval, on a different arrangement or no change in the Settlement.

25.      <u>Calculation of Class Members' Shares of the Net Settlement Fund</u>: Defendant shall calculate and provide to the Settlement Administrator, or the Settlement Administrator shall calculate from Defendant's records as reflected on the Class List (as defined below), the number of shifts worked by a Class Member for Defendant, as a non-exempt employee in California during the Settlement Class Period ("Work Shifts").   Work Shifts will be calculated in accordance with Defendant's regular practice for tracking Work Shifts.   Each Class Member's share of the NSF ("Individual Settlement Share(s)") will be calculated initially for purposes of mailing the Notice by multiplying the NSF by a fraction, the numerator of which is the Class Member's total number of Work Shifts, and the denominator of which is the total number of Work Shifts of all Class Members.   Each Settlement Class Member's final Individual Settlement Share for purposes of payment will be calculated by multiplying the NSF by a fraction, the numerator of which is the Settlement Class Member's total number of Work Shifts, and the denominator of which is the total number of Work Shifts of all Settlement Class Members.

26.      <u>Right to Opt Out, Object, and/or Dispute Work Shifts</u>:  The Notice will be mailed to all Class Members, and will advise each Class Member of their right to opt out of the Settlement Agreement, object to all or any part of the Settlement Agreement, and/or dispute the number of Work Shifts credited to them.   Any Class Member who wishes to opt out from the Settlement Agreement, object to the Settlement Agreement, and/or dispute the number of Work Shifts credited to him or

her, must do so in writing to the Settlement Administrator postmarked no later than forty-five (45) calendar days from the date of mailing of the Notice to the Class Members ("Response Deadline").

        a.    <u>Opting Out of the Settlement Agreement</u>:  A request to opt out of and be excluded from the Settlement Agreement ("Request for Exclusion") must include: (i) the full name, current mailing address, signature, and last four digits of the Social Security number of the Class Member seeking exclusion; (ii) the case name and number of the Litigation; and (iii) a statement that the Class Member seeks to be excluded from the Settlement Agreement, the same or substantially similar to the following language:  "I elect to opt-out of the *Dawson v. HITCO Carbon Composites, Inc.* class action settlement.  I understand that by doing so, I will not participate in the settlement, and will not receive any money from it."  In the event that ten percent (10%) or more of the Class Members submit a timely and valid Request for Exclusion, Defendant will have the option to rescind and terminate the Settlement resulting in both Parties returning to their pre-settlement positions in the Litigation.  Should the 10% threshold for opt outs be exceeded, the Settlement Administrator shall notify lead counsel for all Parties via email immediately, and Defendant shall have ten (10) calendar days from the date of this email, to exercise its option to rescind and terminate the Settlement as referenced in this Paragraph.

        b.    <u>Objecting to the Settlement Agreement</u>: An objection to the Settlement Agreement ("Objection"), must include: (i) the full name, current mailing address, signature, and last four digits of the Social Security number of the objecting Class Member; (ii) the case name and number of the Litigation; (iii) a statement indicating the legal and factual grounds for the objection; (iv) a statement indicating whether the objecting Class Member is represented by counsel and identifying any such counsel; and (v) a statement indicating whether the objecting Class Member intends to appear for and wishes to be heard at the Final Approval Hearing.

///

          c.    <u>Disputing Work Shifts</u>:    A Class Member's dispute of the number of Work Shifts credited and used to calculate the Class Member's Individual Settlement Share, ("Work Shifts Dispute") must include: (i) the full name, current mailing address, telephone number, signature, and last four digits of the Social Security number of the disputing Class Member; (ii) the case name and number of the Litigation; (iii) a statement indicating that the Class Member seeks to dispute the number of Work Shifts credited to him or her, the time period(s) he or she worked for Defendant in a non-exempt position in California during the Settlement Class Period, and the number of Work Shifts that he or she contends should be credited to him or her; and (iv) documentation and/or other facts supporting the Class Member's position.  In response to any timely Work Shifts Dispute, Defendant will first verify the information contained in the disputing Class Member's personnel file and Defendant's payroll records.  Unless the Class Member can establish that the number of Work Shifts credited to him or her is incorrect, by providing documentation in support thereof or other details to substantiate his or her position, the total number of Work Shifts established by Defendant's records will control.  Class Counsel and Defendant's Counsel will then make a good faith effort to resolve the dispute informally before the Final Approval Hearing.  If counsel for the Parties cannot agree, the dispute shall be resolved by the Settlement Administrator before the Final Approval Hearing, who shall examine the records provided by the Defendant and the Class Member, and shall be the final arbiter of disputes relating to a Class Member's Work Shifts.  The Settlement Administrator's determination regarding any such dispute shall be final for purposes of administering notice of the Settlement, subject to final review, determination, and approval by the Court.

       27.  <u>Funding of Settlement</u>:  Within ten (10) business days following the occurrence of the Effective Date of the Settlement as defined above, Defendant shall transfer the GSF in the amount of One Million One Hundred Thousand Dollars ($1,100,000.00) to a Qualified Settlement Fund account ("Settlement Account")

established by the Settlement Administrator.   Thereafter, the Settlement Administrator shall distribute the funds as soon as is practical in accordance with the terms of this Settlement Agreement and as ordered by the Court.  No funds will be payable by Defendant prior to that time.

28.   Payment Procedures:  Within ten (10) business day after Defendant deposits the GSF into the Settlement Account created by the Settlement Administrator, the Settlement Administrator shall distribute payment of all Individual Settlement Payments to Settlement Class Members (as provided in Paragraph 25, above), Attorneys' Fees and Costs to Class Counsel, Enhancement Awards to Class Representatives, LWDA Payment to the LWDA, and Settlement Administration Costs to the Settlement Administrator, in accordance with this Settlement Agreement and as ordered by the Court.

29.   Tax Treatment of Settlement Payments:

a.  Each Individual Settlement Share will be allocated as 25% wages ("Wages Portion"), 25% penalties, 25% statutory and other non-wage damages, and 25% interest.  The penalties, statutory and other non-wage damages, and interest portions are collectively referred to as "Non-Wage Portions."

b.  Prior to distribution, Individual Settlement Shares will be subject to reduction for required employee-side and employer-side payroll taxes, contributions, and withholding with respect to the Wages Portion, resulting in net payment which is referred to as "Individual Settlement Payment(s)."

c.  Each recipient of any monies paid in accordance with this Settlement Agreement is responsible for any taxes associated with the monies received by each recipient.

d.  If required by state or federal tax requirements, the Settlement Administrator will issue IRS Form W-2 to Settlement Class Members and prepare appropriate W-4 payroll tax deductions for the Wages Portion.  Where otherwise required, the Settlement Administrator will prepare a Form 1099 for Settlement Class

Members for the Non-Wage Portions.  The Settlement Administrator will be responsible for preparing these forms timely and correctly.  Settlement Class Members will be responsible for correctly characterizing the compensation that they receive pursuant to the Form 1099 and for payment of any taxes owing on said amount.

e.  The Parties acknowledge and agree that neither they nor their attorneys have made any representations regarding the tax consequences of any and all payments made under this Settlement Agreement.  Settlement Class Members will be required to pay all federal, state or local taxes, if any, which are required by law to be paid with respect to any and all payments made to them under the Settlement. The Parties further agree that Defendant shall have no legal obligation to pay, on behalf of Settlement Class Members, any taxes, deficiencies, levies, assessments, fines, penalties, interest or costs, which may be required to be paid with respect to the settlement payments.

30.   Tax Treatment of Enhancement Awards:   The Class Representatives will receive an IRS Form 1099 for their individual Enhancement Awards, which will be prepared by the Settlement Administrator, and will be responsible for correctly characterizing this additional compensation for tax purposes and for payment of any taxes owing on said amounts.

31.   Undistributed Funds:   Individual Settlement Payment checks will remain valid and negotiable for one hundred and eighty (180) days after the date of issuance.  If an Individual Settlement Payment check is returned before the expiration of the 180-day period ("Returned Check"), within five (5) days of receipt of the Returned Check, the Settlement Administrator shall undertake a skip-trace search for an alternate mailing address and re-mail the Returned Check to an alternate mailing address (if one is located), under a cover letter indicating that the Returned Check will continue to be valid and negotiable for thirty (30) days after the date of re-mailing.  In the event that any checks mailed to Settlement Class Members

16

are not cashed, deposited, or otherwise negotiated within the 180-day period, no forwarding address can be located for a Returned Check, or a Returned Check is re-mailed but not cashed, deposited, or otherwise negotiated within the 30-day period from the re-mailing of the Returned Check, then the checks shall be cancelled by the Settlement Administrator, and the funds associated with such cancelled checks shall be transmitted by the Settlement Administrator pursuant to governing California law to the State of California Unclaimed Property Fund, to be held there in the name of and for the benefit of such Class Members under California's escheatment laws, and such Class Members shall nevertheless be bound to the Settlement and the Final Approval Order.

## <u>NOTICE TO THE CLASS</u>

32.   <u>Compilation of Class List</u>:  The Parties agree that within thirty (30) calendar days after preliminary approval of this Settlement Agreement by the Court, Defendant will provide a final "Class List" to the Settlement Administrator, which list shall include the following most up to date information about each Class Member in an electronic format:  (a) full name; (b) most current mailing address and phone number as reflected in Defendant's personnel records; (c) Social Security Number; (d) hire date of record with Defendant, and termination date of record if applicable; and (e) number of Work Shifts for each Class Member (or, at Defendant's option, data for the number of shifts to be calculated by the Settlement Administrator).  The final Class List will be designated as Highly Confidential, Attorneys' Eyes Only, pursuant to the Revised Protective Order Pursuant to Stipulation approved and entered by the Court on August 9, 2018 (Dkt. #83) (the "Protective Order"), and provided by Defendant after the Settlement Administrator signs and returns to Defendant's Counsel the Acknowledgment and Agreement to be Bound attached as Exhibit A to such Protective Order.  The final Class List shall be used only by the Settlement Administrator and only for purposes of administering the Settlement, and nothing in this Settlement Agreement limits the use of it for that purpose.  The

17

Settlement Administrator will update addresses contained in the Class List <u>prior</u> to the mailing of the Notice to the Class, by using the U.S. Postal Service's National Change of Address Database.   Once the final Class List has been received from Defendant, and updated as stated herein, the list shall then be referred to as the "Class Data List."   In response to any contention by an individual that he or she is a Class Member who was omitted from the Class Data List, made on or before the Response Deadline, Defendant will first verify the information contained in the personnel file of the individual at issue and Defendant's payroll records. Unless the individual at issue can establish that they should have been included in the Class Data List, by way of supporting documentation, Defendant's records will control. Class Counsel and Defendant's Counsel will then make a good faith effort to determine whether or not the individual at issue is a Class Member.   If counsel for the Parties cannot agree, then the Settlement Administrator shall determine whether the individual at issue is a Class Member, who shall examine the records provided by the Defendant and the individual at issue, and shall be the final arbiter of whether or not the individual at issue is a Class Member, subject to final review, determination and approval by the Court.   If individuals who were not included in the Class Data List provided by Defendant are determined to be Class Members under this provision, and this causes the Buffer Class Size and Buffer Work Shifts as defined in Paragraph 24 to be exceeded as set forth therein, then the provisions of Paragraph 24(a)-(c) apply.

33.   <u>Dissemination of Notice of Class Action Settlement</u>: Within ten (10) business days of its receipt of the Class Data List, the Settlement Administrator will send the Notice to the Class Members, by first-class mail, at their most current address of record or such other address as located by the Settlement Administrator in conformity with Paragraph 32, in the form attached hereto as **Exhibit C** or as otherwise approved by the Court.

///

## RELEASE BY THE CLASS AND THE LWDA

34.    Upon occurrence of the Effective Date, Plaintiffs, Settlement Class Members, and the LWDA (for those claims described below which arise or would be actionable under PAGA), will release HITCO Carbon Composites, Inc. and each of its respective affiliates, parent companies, subsidiaries, shareholders, officers, partners, directors, members, owners, servants, employees, employers, agents, contractors, attorneys, insurers, predecessors, representatives, accountants, executors, successors, and assigns, past, present, and future, including without limitation SGL Technologies LLC and SGL Carbon, LLC, and each and all of their respective shareholders, officers, partners, directors, members, owners, servants, employees, employers, agents, contractors, attorneys, insurers, predecessors, representatives, accountants, executors, successors, assigns, and pension, profit sharing, retirement savings, health and welfare, and any other employee benefit plans of any nature and the respective trustees, administrators, sponsors, fiduciaries, successors, agents, and employees of all such plans, past, present, and future, and all persons acting under, by, through, or in concert with any of them (collectively, the "Released Parties"), of and from any and all allegations, claims, debts, rights, demands, charges, complaints, actions, causes of action, guarantees, costs, expenses, attorneys' fees, economic damages, non-economic damages, restitution, civil penalties, statutory penalties, liquidated damages, punitive damages, interest, obligations, liabilities, or other monies and remedies, of any and every kind, contingent or accrued, that have been or could have been alleged or asserted in any of the pleadings filed in the Litigation based on the factual and/or legal violations allegations contained therein, including the TAC, and in any notice sent to the LWDA pursuant to PAGA based on the factual and/or legal violations allegations contained therein, including the PAGA notices sent to date or to be sent pursuant to the Settlement, for failure to provide or pay for missed or non-compliant meal breaks, failure to authorize and permit or pay for missed or non-compliant rest breaks, failure to pay or underpaid wages of any

type (including minimum and/or overtime wages), failure to timely pay wages of any type, failure to furnish accurate itemized wage statements, failure to provide and maintain accurate timekeeping and/or payroll records, failure to reimburse employment-related expenses, violation of the California Unfair Competition Law ("UCL"), violation of the federal Fair Labor Standards Act ("FLSA"), and/or civil penalties pursuant to PAGA, based in whole or in part on any direct or imputed violation of any federal, state, local or administrative constitution, charter, law, rule, regulation or ordinance, through the date of Final Approval of this Settlement Agreement (collectively, "Released Claims").   To the extent required under applicable law, Settlement Class Members will be deemed to have opted-in to the Litigation for purposes of the FLSA by operation of cashing, depositing, or otherwise negotiating their Individual Settlement Payment check.

## ADDITIONAL RELEASE BY CLASS REPRESENTATIVES

35.   In addition to the release set forth in Paragraph 34, Plaintiffs for themselves alone, as individuals, release the Released Parties of and from any and all claims, debts, liabilities, demands, obligations, guarantees, costs, expenses, attorneys' fees, damages, actions or causes of action of every kind or nature, contingent or accrued, which do or may exist as of the date of the execution of this Settlement Agreement and through and including the date of Final Approval of this Settlement Agreement.  In connection therewith, Plaintiffs, waive the provisions of California Civil Code Section 1542 which states:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED**

PARTY.

## INJUNCTION BARRING PURSUIT OF RELEASED CLAIMS

36.     As part of the Final Approval of the Settlement, Plaintiffs, Settlement Class Members, and the LWDA shall be enjoined from filing, initiating or continuing to prosecute any actions, claims, complaints, or proceedings in court, arbitration, with the California Division of Labor Standards Enforcement ("DLSE"), with the LWDA, or with any other entity, with respect to the claims released as described in Paragraphs 34 and 35, above.  This settlement is conditioned upon the release by Settlement Class Members, Plaintiffs, and the LWDA as described in Paragraphs 34 and 35, above, and upon covenants by Plaintiffs and Settlement Class Members, and on behalf of the LWDA, that they will not and cannot participate in any actions, lawsuits, proceedings, complaints, or charges brought individually, by the DLSE, the LWDA, or by any other agency, persons or entity in any court, arbitration or before any administrative body with respect to the claims released as described in Paragraphs 34 and 35, above, nor will such Settlement Class Members, Plaintiffs, or the LWDA contest or interfere with efforts by Defendant or by any other Released Parties to oppose any attempt to bring such released claims against any of them. Additionally, it is agreed herein that neither injunctive or declaratory relief, nor any equitable relief beyond what could be characterized as restitution of claimed unpaid wages required to be paid pursuant to this Settlement Agreement, will be ordered by the Court against Defendant in Final Approval of the Settlement, which will otherwise be grounds for Defendant rescinding and terminating this Settlement Agreement.

## DUTIES OF THE PARTIES PRIOR TO COURT APPROVAL

37.     The Parties shall promptly seek the Court's approval of this Settlement. Not later than five (5) court days prior to the submission of the motion for preliminary approval of this Settlement Agreement to the Court, Class Counsel will submit a near-final draft thereof (including all supporting papers and proposed order)

to counsel for Defendant for their review and comment.  As soon as practicable after execution of this Settlement Agreement, Class Representatives and Class Counsel shall apply to the Court for the entry of a preliminary approval order which would accomplish the following:

a.      Schedule a hearing ("Final Approval Hearing") on the question of whether the Settlement, including, *inter alia*, the payment of Attorneys' Fees and Costs, Enhancement Awards, and LWDA Payment should be finally approved as fair, reasonable, and adequate, and finally resolving any outstanding issues or disputes remaining from the administration of the notice of the settlement;

b.      Conditionally certify the Class for purposes of the Settlement only;

c.      Approve, as to form and content, the proposed Notice;

d.      Direct the mailing of the Notice by first class mail to the Class Members;

e.      Preliminarily approve the Settlement and monetary allocations for awards/payments of Attorneys' Fees and Costs, Settlement Administration Costs, Enhancement Awards, and PAGA Payment, subject to the final review and approval by the Court;

f.      Preliminarily approve Simpluris, Inc. as the Settlement Administrator;

g.      Preliminarily approve and appoint Plaintiffs as representatives of the Class; and

h.      Preliminarily approve and appoint Plaintiffs' Counsel as counsel for the Class.

## DUTIES OF THE PARTIES FOLLOWING PRELIMINARY APPROVAL

38.    Not later than five (5) calendar days prior to the submission of the motion seeking Final Approval, Class Counsel will submit a near-final draft thereof (including all supporting papers and proposed order) to counsel for Defendant for

their review and comment.  In conjunction with the request for Final Approval of the Settlement provided for in this Settlement Agreement, Class Counsel will submit a proposed Final Approval Order and Judgment that provides for the following:

a.      Granting final approval of the Settlement, adjudging the terms thereof to be fair, reasonable, and adequate, and directing consummation of its terms and provisions;

b.      Approving and awarding Attorneys' Fees and Costs to Class Counsel;

c.      Approving and awarding Enhancement Awards to Class Representatives Dawson and Sterling;

d.      Approving and awarding the LWDA Payment, pursuant to the PAGA, to the LWDA;

e.      Permanently enjoining and restraining Plaintiffs, Settlement Class Members, and the LWDA from and against initiating or pursuing any claims settled herein and released by this Settlement Agreement; and

f.      Dismissing the Litigation on the merits and with prejudice, and entering judgment based thereon.

## PARTIES' AUTHORITY

39.      The signatories hereto hereby represent that they are fully authorized to enter into this Settlement Agreement and bind the Parties hereto to the terms and conditions hereof.

## MUTUAL FULL COOPERATION

40.      The Parties agree to fully cooperate with each other to accomplish the terms of this Settlement Agreement, including but not limited to execution of such documents and to take such other actions as may reasonably be necessary to implement the terms of this Settlement Agreement.  The Parties shall use their best efforts, including all efforts contemplated by this Settlement Agreement and any other efforts that may become necessary by order of the Court, or otherwise, to

effectuate this Settlement Agreement and the terms set forth herein. As soon as practicable after execution of this Settlement Agreement, Class Counsel shall, with the assistance and cooperation of Defendant and their counsel, take all necessary steps to secure the Court's preliminary approval and final approval of this Settlement Agreement.

## NO PRIOR ASSIGNMENTS

41.     The Parties hereto represent, covenant, and warrant that they have not, directly or indirectly, assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action, or rights herein released and discharged except as set forth herein.

## CONSTRUCTION

42.     The Parties hereto agree that the terms and conditions of this Settlement Agreement are the result of lengthy, intensive, arms-length mediated negotiations between the Parties, conducted under the auspices of mediator Louis M. Marlin, Esq., a highly respected and experienced class action mediator. The Parties further agree that this Settlement Agreement shall not be construed in favor of, or against, any Party by reason of the extent to which any Party, or their or its counsel, participated in the drafting of this Settlement Agreement.

## CAPTIONS AND INTERPRETATIONS

43.     Paragraph titles or captions contained herein are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Settlement Agreement or any provision hereof. Each term of this Settlement Agreement is contractual and not merely a recital.

## MODIFICATION

44.     This Settlement Agreement may not be changed, altered, or modified, except in writing and signed by the Parties hereto, and approved by the Court. This Settlement Agreement may not be discharged except by performance in accordance

with its terms or by a writing signed by the Parties hereto.

## INTEGRATION CLAUSE

45.    This Settlement Agreement contains the entire agreement between the Parties relating to the settlement and the transaction contemplated hereby, and all prior or contemporaneous agreements, understandings, representations, and statements, whether oral or written and whether by a Party or such Party's legal counsel, are merged herein.  No rights hereunder may be waived except in writing.

## BINDING ON ASSIGNS

46.    This Settlement Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective heirs, trustees, executors, administrators, successors, and assigns.

## SIGNATORIES

47.    It is agreed that because of the large number of Settlement Class Members, it is impossible or impractical to have each Settlement Class Member execute this Settlement Agreement.  As such, Plaintiffs are signing on behalf of the Settlement Class Members.  In addition, the Notice will advise all Settlement Class Members of the binding nature of the release of claims under the Settlement and that such shall have the same force and effect as if this Settlement Agreement were executed by each Settlement Class Member.

## CONFIDENTIALITY

48.    Plaintiffs and Class Counsel will maintain the proposed settlement and this Settlement Agreement as confidential and not publicly disclose the same except as set forth herein and in Paragraph 49, below.  Except as set forth in Paragraph 49, below, or as otherwise agreed in writing between the Parties, both before and following the execution of this Settlement Agreement by the Parties and their counsel, there will be no direct or indirect comment or publication by Plaintiffs and Class Counsel (lead or otherwise) of the settlement in terms of affirmative or responsive media statements/comments, press releases or conferences, website

postings or content, social media postings or content, other Internet postings or content, subscribed email messages, newsletters, disseminated updates, mass mailings, or any other comment or publication to the press, media or public at large. This shall not apply to or limit the public filing of motions or other case materials by Class Counsel in the Litigation related to seeking and obtaining Court approval of the proposed settlement and the related awards of attorneys' fees and costs, enhancements and the other relief set forth in this Settlement Agreement, or to communications between Class Counsel, Plaintiffs, and/or Settlement Class Members in the Litigation, except that prior to the filing of the motion for preliminary approval of the Settlement in the Litigation, Class Counsel shall not discuss the Settlement with Class Members other than the named Plaintiffs. Class Counsel may otherwise state only that the Litigation has been settled on terms mutually agreeable to the Parties. The Parties understand and agree that there may be media coverage of the settlement of the Litigation not initiated by Plaintiffs, directly or indirectly. It is also agreed and understood that the Parties may disclose the settlement to their families, plus their legal, tax, or accounting advisors, insurance companies, or as required by law, regulatory rules or regulatory requirements.

## **WEBSITE**

49.     The Parties agree that the Settlement Administrator may use U.S. Mail and an information-only website ("Settlement Website") to provide notice and information about the Settlement to Class Members. The Settlement Website is to be established by the Settlement Administrator solely for purposes of the administration of the Settlement, and the domain name used for the website will be subject to the Parties' reasonable, mutual approval. Not later than the date that the Settlement Administrator must remit any funds associated with cancelled Individual Settlement Payment checks, as set forth in Paragraph 31, the Settlement Website will be taken down. No information about the Litigation or the settlement may be posted on any of Class Counsel's websites except as expressly set forth herein without Defendant's

prior written consent.

## COUNTERPARTS

50. This Settlement Agreement may be executed in counterparts, and when each Party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Settlement Agreement, which shall be binding upon and effective as to all Parties.

## GOVERNING LAW

51. The Parties agree that California law governs the interpretation and application of this Settlement Agreement, except to the extent governed by federal law in which case federal law will apply.

**IT IS SO AGREED:**

DATED: 23 _____2019   _____
Andrew Dawson (Apr 23, 2019)
ANDREW DAWSON
Plaintiff and Proposed Class Representative

DATED: _____2019   _____
DARRYL STERLING
Proposed Plaintiff and Proposed Class Representative

DATED: _____2019   HITCO CARBON COMPOSITES, INC.

By: _____

Name: _____

Title: _____

/// 
///

27

1  prior written consent.

2  <u>**COUNTERPARTS**</u>

3      50.    This Settlement Agreement may be executed in counterparts, and when

4  each Party has signed and delivered at least one such counterpart, each counterpart

5  shall be deemed an original, and, when taken together with other signed counterparts,

6  shall constitute one Settlement Agreement, which shall be binding upon and effective

7  as to all Parties.

8  <u>**GOVERNING LAW**</u>

9      51.    The Parties agree that California law governs the interpretation and

10  application of this Settlement Agreement, except to the extent governed by federal

11  law in which case federal law will apply.

12  **IT IS SO AGREED:**

13

14  DATED: _____2019  _____

15            ANDREW DAWSON
16            Plaintiff and Proposed Class Representative

17  DATED: __04/20_____2019  _____
        Darryl Sterling (Apr 21, 2019)
18            DARRYL STERLING
19            Proposed   Plaintiff   and   Proposed   Class
20            Representative

21  DATED: _____2019  HITCO CARBON COMPOSITES, INC.
22

23

24            By: _____

25            Name: _____

26            Title: _____

27  ///

28  ///

27

1  prior written consent.

2  **COUNTERPARTS**

3      50.    This Settlement Agreement may be executed in counterparts, and when

4  each Party has signed and delivered at least one such counterpart, each counterpart

5  shall be deemed an original, and, when taken together with other signed counterparts,

6  shall constitute one Settlement Agreement, which shall be binding upon and effective

7  as to all Parties.

8  **GOVERNING LAW**

9      51.    The Parties agree that California law governs the interpretation and

10  application of this Settlement Agreement, except to the extent governed by federal

11  law in which case federal law will apply.

12  **IT IS SO AGREED:**

13

14  DATED: _____ 2019    _____

15                                 ANDREW DAWSON
                                   Plaintiff and Proposed Class Representative
16

17  DATED: _____ 2019    _____

18                                 DARRYL STERLING
19                                 Proposed   Plaintiff   and   Proposed   Class
                                   Representative
20

21  DATED: April 18 _____ 2019    HITCO CARBON COMPOSITES, INC.
22

23                                 By: _____
24
                                   Name: Kenneth Mannon
25

26                                 Title: President

27  ///

28  ///

27

1 | **APPROVED AS TO FORM:**

2 | DATED: April 23____2019          **LAWYERS *for* JUSTICE, PC**

3

4 | By: _____

5 | Edwin Aiwazian, Esq.
Attorneys for Plaintiff Andrew Dawson

6 | and Proposed Plaintiff Darryl Sterling

7 | DATED: _____2019          **GIRARDI | KEESE**

8

9 | By: _____

10 | V. Andre Sherman, Esq.
Attorneys for Plaintiff Andrew Dawson
and Proposed Plaintiff Darryl Sterling

11

12

13 | DATED: _____2019          **MCGUIREWOODS LLP**

14

15 | By: _____

16 | Matthew C. Kane, Esq.
Sabrina A. Beldner, Esq.

17 | Sylvia J. Kim, Esq.
Attorneys for Defendant

18 | HITCO Carbon Composites, Inc.

19

20

21

22

23

24

25

26

27

28

28

**APPROVED AS TO FORM:**

DATED: _____2019          **LAWYERS *for* JUSTICE, PC**

By: _____
Edwin Aiwazian, Esq.
Attorneys for Plaintiff Andrew Dawson
and Proposed Plaintiff Darryl Sterling

DATED: __April 23,___2019          **GIRARDI | KEESE**

By: _____
V. Andre Sherman, Esq.
Attorneys for Plaintiff Andrew Dawson
and Proposed Plaintiff Darryl Sterling

DATED: __4/24/__2019          **McGUIREWOODS LLP**

By: _____
Matthew C. Kane, Esq.
Sabrina A. Beldner, Esq.
Sylvia J. Kim, Esq.
Attorneys for Defendant
HITCO Carbon Composites, Inc.

**EXHIBIT A**

V. Andre Sherman (Cal. State Bar No. 198684)
**GIRARDI | KEESE**
1126 Wilshire Boulevard
Los Angeles, California 90017
Telephone: (213) 977-0211
Facsimile: (213) 481-1554

Edwin Aiwazian (Cal. State Bar No. 232943)
Arby Aiwazian (Cal. State Bar No. 269827)
Joanna Ghosh (Cal. State Bar No. 272479)
**LAWYERS *for* JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203
Telephone: (818) 265-1020
Facsimile: (818) 265-1021

*Attorneys for* Plaintiffs

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANDREW DAWSON, individually, and on behalf of other members of the general public similarly situated; DARRYL STERLING, individually, and on behalf of other members of the public similarly situated and on behalf of other aggrieved employees pursuant to the California Private Attorneys General Act;<br><br>Plaintiffs,<br><br>vs.<br><br>HITCO CARBON COMPOSITES, INC., an unknown business entity; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No.:  2:16-cv-07337-PSG-FFM<br><br>Honorable Philip S. Gutierrez<br>Courtroom 880<br><br>**[PROPOSED] THIRD AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND ENFORCEMENT UNDER THE PRIVATE ATTORNEYS GENERAL ACT, CALIFORNIA LABOR CODE § 2698, ET SEQ.**<br><br>(1) Violation of California Labor Code §§ 226.7 and 512(a) (Unpaid Meal Period Premiums);<br>(2) Violation of California Labor Code § 226.7 (Unpaid Rest Period Premiums);<br>(3) Violation of California Labor Code §§ 1194 and 1197 (Unpaid Minimum Wages);<br>(4) Violation of California Labor Code §§ 201 and 202 (Final Wages Not Timely Paid);<br>(5) Violation of California Labor Code § 226(a) (Non-Compliant Wage Statements<br>(6) Violation of Labor Code §§ 2800 and 2802 (Unreimbursed |

**LAWYERS *for* JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

Business Expenses);
(7) Violation of California Business & Professions Code §§ 17200, et seq.
(8) Violation of Cal. Lab. Code § 2698, et seq. (Private Attorneys General Act of 2004)

## DEMAND FOR JURY TRIAL

COME NOW, Plaintiff ANDREW DAWSON ("Plaintiff DAWSON"), individually, and on behalf of other members of the general public similarly situated, and Plaintiff DARRYL STERLING ("Plaintiff STERLING") (collectively, "Plaintiffs"), individually, and on behalf of other members of the general public similarly situated and on behalf of other aggrieved employees pursuant to the California Private Attorneys General Act, and allege as follows:

## JURISDICTION AND VENUE

1.     This class action was originally brought in the Superior Court for the County of Los Angeles pursuant to the California Code of Civil Procedure section 382.

2.     This Court has asserted jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d).

3.     Upon information and belief, Defendant is a Delaware corporation doing business in California, and at all times hereinafter mentioned, an employer whose employees are engaged throughout this District and throughout the State of California. Defendant maintains offices, has agents, and is licensed to transact and does transact business in this District.

## PARTIES

4.     Plaintiff DAWSON is an individual residing in the State of California, County of Los Angeles.

5.     Plaintiff STERLING is an individual residing in the State of California, County of Los Angeles.

2

**LAWYERS** *for* **JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

6.      Defendant HITCO CARBON COMPOSITES, INC., at all times herein mentioned, was and is, upon information and belief, an employer whose employees are engaged throughout the State of California, including the County of Los Angeles.

7.      At all relevant times, Defendants HITCO CARBON COMPOSITES, INC. was the "employer" of Plaintiffs within the meaning of all applicable California laws and statutes.

8.      At all times herein relevant, Defendants HITCO CARBON COMPOSITES, INC. and DOES 1 through 100, and each of them, were the agents, partners, joint venturers, joint employers, representatives, servants, employees, successors-in-interest, co-conspirators and/or assigns, each of the other, and at all times relevant hereto were acting within the course and scope of their authority as such agents, partners, joint venturers, joint employers, representatives, servants, employees, successors, co-conspirators and/or assigns, and all acts or omissions alleged herein were duly committed with the ratification, knowledge, permission, encouragement, authorization and/or consent of each defendant designated as a DOE herein.

9.      The true names and capacities, whether corporate, associate, individual or otherwise, of defendants DOES 1 through 100, inclusive, are unknown to Plaintiffs who sue said defendants by such fictitious names.  Plaintiffs are informed and believe, and based on that information and belief allege, that each of the defendants designated as a DOE is legally responsible for the events and happenings referred to in this Complaint, and unlawfully caused the injuries and damages to Plaintiffs and the other class members as alleged in this Complaint. Plaintiffs will seek leave of court to amend this Complaint to show the true names and capacities when the same have been ascertained.

///

**THIRD AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND ENFORCEMENT UNDER
THE PRIVATE ATTORNEYS GENERAL ACT, CALIFORNIA LABOR CODE § 2698, ET SEQ. AND
DEMAND FOR JURY TRIAL**

10.     Defendant HITCO CARBON COMPOSITES, INC. and DOES 1 through 100 will hereinafter collectively be referred to as "Defendants."

11.     Plaintiffs further allege that Defendants, directly or indirectly controlled or affected the working conditions, wages, working hours, and conditions of employment of Plaintiffs and the other class members and aggrieved employees so as to make each of said Defendants employers and employers liable under the statutory provisions set forth herein.

## CLASS ACTION ALLEGATIONS

12.     Plaintiffs bring this action on his own behalf and on behalf of all other members of the general public similarly situated, and, thus, seeks class certification under Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure.

13.     The proposed class is defined as follows:

> All current and former hourly-paid or non-exempt employees who worked for any of the Defendants within the State of California at any time during the period from August 29, 2012 to final judgment.

14.     Plaintiffs reserve the right to establish subclasses as appropriate.

15.     The class is ascertainable and there is a well-defined community of interest in the litigation:

a.      <u>Numerosity</u>: The class members are so numerous that joinder of all class members is impracticable.  The membership of the entire class is unknown to Plaintiffs at this time; however, the class is estimated to be greater than fifty (50) individuals and the identity of such membership is readily ascertainable by inspection of Defendants' employment records.

b.      <u>Typicality</u>: Plaintiff's claims are typical of all other class members' as demonstrated herein.  Plaintiffs will fairly and adequately protect the interests of the other class members with

**LAWYERS** *for* **JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

4

**LAWYERS** *for* **JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

whom they have a well-defined community of interest.

c.   <u>Adequacy</u>: Plaintiffs will fairly and adequately protect the interests of each class member, with whom he has a well-defined community of interest and typicality of claims, as demonstrated herein.   Plaintiffs have no interest that is antagonistic to the other class members.  Plaintiffs' attorneys, the proposed class counsel, are versed in the rules governing class action discovery, certification, and settlement.  Plaintiffs have incurred, and during the pendency of this action will continue to incur, costs and attorneys' fees, that have been, are, and will be necessarily expended for the prosecution of this action for the substantial benefit of each class member.

d.   <u>Superiority</u>: A class action is superior to other available methods for the fair and efficient adjudication of this litigation because individual joinder of all class members is impractical.

e.   <u>Public Policy Considerations</u>: Certification of this lawsuit as a class action will advance public policy objectives.  Employers of this great state violate employment and labor laws every day.  Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation.  However, class actions provide the class members who are not named in the complaint anonymity that allows for the vindication of their rights.

16.   There are common questions of law and fact as to the class members that predominate over questions affecting only individual members. The following common questions of law or fact, among others, exist as to the members of the class:

///

5

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

a.   Whether Defendants' failure to pay wages, without abatement or reduction, in accordance with the California Labor Code, was willful;

b.   Whether Defendants' had a corporate policy and practice of failing to pay their hourly-paid or non-exempt employees within the State of California for all hours worked, missed (short, late, interrupted, and/or missed altogether) meal periods and rest breaks in violation of California law;

c.   Whether Defendants required Plaintiffs and the other class members to work over eight (8) hours per day, over forty (40) hours per week, and/or over six (6) days per workweek, and failed to pay the legally required overtime compensation to Plaintiffs and the other class members;

d.   Whether Defendants implemented an improper rounding policy during the relevant time period;

e.   Whether Defendants deprived Plaintiffs and the other class members of meal and/or rest periods or required Plaintiffs and the other class members to work during meal and/or rest periods without compensation;

f.   Whether Defendants failed to pay minimum wages to Plaintiffs and the other class members for all hours worked;

g.   Whether Defendants failed to pay all wages due to Plaintiffs and the other class members within the required time upon their discharge or resignation;

h.   Whether Defendants failed to timely pay all wages due to Plaintiffs and the other class members during their employment;

///

6

**THIRD AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND ENFORCEMENT UNDER THE PRIVATE ATTORNEYS GENERAL ACT, CALIFORNIA LABOR CODE § 2698, ET SEQ. AND DEMAND FOR JURY TRIAL**

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

i.   Whether Defendants complied with wage reporting as required by the California Labor Code; including, *inter alia*, section 226;

j.   Whether Defendants kept complete and accurate payroll records as required by the California Labor Code, including, *inter alia*, section 1174(d);

k.   Whether Defendants kept complete and accurate payroll records as required by the California Labor Code;

l.   Whether Defendants failed to reimburse Plaintiffs and the other class members for necessary business-related expenses and costs;

m.   Whether Defendants' conduct was willful or reckless;

n.   Whether Defendants engaged in unfair business practices in violation of California Business & Professions Code section 17200, et seq.;

o.   The appropriate amount of damages, restitution, and/or monetary penalties resulting from Defendants' violation of California law; and

p.   Whether Plaintiffs and the other class members are entitled to compensatory damages pursuant to the California Labor Code.

17.   Class certification of the First through Seventh causes of action is appropriate pursuant to Rule 23(b)(3) because the aforementioned questions of law and fact common to the class predominate over any questions affecting only individual members of the class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendants' common and uniform policies and practices have unlawfully denied Plaintiffs and the other class members meal period premiums for all meal periods that were not provided in compliance with the applicable Industrial Welfare

7

**LAWYERS** *for* **JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

Commission ("IWC") Order and California Labor Code, have denied them rest period premiums for all rest periods that were not provided in compliance with the applicable IWC Order and California Labor Code, have denied them of minimum wages for all hours worked, have denied them payment of their final wages in a timely manner, have denied them of accurate wage statements in compliance with the California Labor Code, have denied them from getting reimbursed for necessary business related expenses, and amount to unfair competition under California Business and Professions Code Sections 17200 et seq. The damages suffered by individual class members are relatively small compared to the expense and burden of individual prosecution of this litigation. For this reason, as well as the fact that class members currently employed by Defendants may fear direct or indirect retaliation from Defendants for prosecuting an action against Defendants, the class members' interests in individually controlling the prosecution of this action is minimal. In addition, a class action in this forum is desirable as it will eliminate the risk of inconsistent rulings regarding the legality of Defendants' policies, practices, and procedures. Managing this case as a class action will not present difficulties as the parties can utilize approved methods of random statistical sampling and expert testimony at trial.

18.     Once class certification is granted, Plaintiffs will send notice to all members of the class consistent with the requirements of Rule 23(c)(2) of the Federal Rules of Civil Procedure. Specifically, Plaintiffs will submit a proposed notice to the Court for its approval, stating (i) the nature of this action, (ii) the definition of the certified class, (iii) the class claims, issues, and/or defenses, (iv) that a class member may enter an appearance through an attorney if he or she so desires, (v) that the Court will exclude from the class any member who requests exclusion, (vi) the time and manner for requesting exclusion, and (vii) the binding effect of a class judgment on class members under Rule 23(c)(3).

**THIRD AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND ENFORCEMENT UNDER THE PRIVATE ATTORNEYS GENERAL ACT, CALIFORNIA LABOR CODE § 2698, ET SEQ. AND DEMAND FOR JURY TRIAL**

# PAGA ALLEGATIONS

19.   At all times herein set forth, PAGA was applicable to Plaintiff STERLING's employment by Defendants.

20.   At all times herein set forth, PAGA provides that any provision of law under the California Labor Code that provides for a civil penalty, including unpaid wages and premium wages, to be assessed and collected by the LWDA for violations of the California Labor Code may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself and other current or former employees pursuant to procedures outlined in California Labor Code section 2699.3.

21.   Pursuant to PAGA, a civil action under PAGA may be brought by an "aggrieved employee," who is any person that was employed by the alleged violator and against whom one or more of the alleged violations was committed.

22.   Plaintiff STERLING was employed by Defendants and the alleged violations were committed against him during his time of employment and he is, therefore, an aggrieved employee.  Plaintiff STERLING and the other employees are "aggrieved employees" as defined by California Labor Code section 2699(c) in that they are current or former employees of Defendants, and one or more of the alleged violations were committed against them.

23.   Pursuant to California Labor Code sections 2699.3 and 2699.5, an aggrieved employee, including Plaintiff STERLING, may pursue a civil action arising under PAGA after the following requirements have been met:

    a.   The aggrieved employee shall give written notice by certified mail (hereinafter "Employee's Notice") to the LWDA and the employer of the specific provisions of the California Labor Code alleged to have been violated, including the facts and theories to support the alleged violations.

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

9

**LAWYERS** *for* **JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

b.     The LWDA shall provide notice (hereinafter "LWDA Notice")
to the employer and the aggrieved employer by certified mail
that it does not intend to investigate the alleged violation
within sixty (60) calendar days of the postmark date of the
Employee's Notice. Upon receipt of the LWDA Notice, or if
the LWDA Notice is not provided within sixty-five (65)
calendar days of the postmark date of the Employee's Notice,
the aggrieved employee may commence a civil action pursuant
to California Labor Code section 2699 to recover civil
penalties in addition to any other penalties to which the
employee may be entitled.

24.     On November 6, 2018 and January 28, 2019, Plaintiff STERLING
provided written notice by certified mail to the LWDA and to Defendants of the
specific provisions of the California Labor Code alleged to have been violated,
including the facts and theories to support the alleged violations.  Therefore, the
administrative prerequisites under California Labor Code section 2699.3(a) to
recover civil penalties, including unpaid wages and premium wages per
California Labor Code section 558 against Defendants, in addition to other
remedies, for violations of California Labor Code sections 201, 202, 203, 204,
226(a), 226.7, 510, 512, 551, 552, 558, 1174(d), 1194, 1194.2, 1197, 1197.1,
1198, 2800, and 2802 have been satisfied.

## **GENERAL ALLEGATIONS**

25.     At all relevant times set forth herein, Defendants employed Plaintiffs
and other persons as hourly-paid or non-exempt employees within the State of
California.

///

///

**THIRD AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND ENFORCEMENT UNDER
THE PRIVATE ATTORNEYS GENERAL ACT, CALIFORNIA LABOR CODE § 2698, ET SEQ. AND
DEMAND FOR JURY TRIAL**

26.   Defendants, jointly and severally, employed Plaintiff DAWSON as an hourly-paid, non-exempt Utility Worker, from approximately January 2013 to approximately June 2014, in the State of California, County of Los Angeles.

27.   Defendants, jointly and severally, employed Plaintiff STERLING as an hourly-paid, non-exempt Material Handler, from approximately May 2011 to approximately December 2017, in the State of California, County of Los Angeles

28.   Defendants hired Plaintiffs and the other class members and classified them as hourly-paid or non-exempt employees, and failed to compensate them for all hours worked, and missed, shortened, late, and/or interrupted meal periods and/or rest breaks.

29.   Defendants had the authority to hire and terminate Plaintiffs and the other class members; to set work rules and conditions governing Plaintiffs and the other class members' employment; and to supervise their daily employment activities.

30.   Defendants exercised sufficient authority over the terms and conditions of Plaintiffs' and the other class members' employment for them to be joint employers of Plaintiffs and the other class members.

31.   Defendants directly hired and paid wages and benefits to Plaintiffs and the other class members.

32.   Defendants continue to employ hourly-paid or non-exempt employees within the State of California.

33.   Plaintiffs and the other class members worked over eight (8) hours in a day, forty (40) hours in a week, and/or six (6) days in a workweek during their employment with Defendants.

34.   Plaintiffs are informed and believe, and based thereon allege, that Defendants knew or should have known that Plaintiffs and the other class members were entitled to receive certain wages for overtime compensation and that they

**THIRD AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND ENFORCEMENT UNDER THE PRIVATE ATTORNEYS GENERAL ACT, CALIFORNIA LABOR CODE § 2698, ET SEQ. AND DEMAND FOR JURY TRIAL**

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

1   were not receiving wages for overtime compensation.

2       35.     Plaintiffs are informed and believes, and based thereon allege, that

3   Defendants knew or should have known that Plaintiffs and the other class members

4   were entitled to receive certain wages for overtime compensation and that they

5   were not receiving accurate overtime compensation for all overtime hours worked.

6   The deficiencies include, *inter alia*, requiring Plaintiffs and the other class

7   members to perform work overtime off-the-clock and engaging in an improper

8   rounding policy.

9       36.     Plaintiffs are informed and believe, and based thereon allege, that

10  Defendants engaged in a uniform policy and systematic scheme of wage abuse

11  against their hourly-paid or non-exempt employees within the State of California.

12  This scheme involved, *inter alia*, failing to pay them for all regular wages earned,

13  and missed, shortened, late, and/or interrupted meal periods and rest breaks in

14  violation of California law.

15      37.     Plaintiffs are informed and believe, and based thereon allege, that

16  Defendants failed to provide Plaintiffs and the other class members the required

17  rest and meal periods during the relevant time period as required under the

18  Industrial Welfare Commission Wage Orders and thus they are entitled to any and

19  all applicable penalties.

20      38.     Plaintiffs are informed and believe, and based thereon allege, that

21  Defendants failed to relieve Plaintiffs and other class members of all duties, failed

22  to relinquish control over Plaintiffs and the other class members' activities, failed

23  to permit Plaintiffs and other class members a reasonable opportunity to take, and

24  impeded or discouraged them from taking thirty (30) minute uninterrupted meal

25  breaks no later than the end of their fifth hour of work for shifts lasting at least six

26  (6) hours, and/or to take second thirty (30) minute uninterrupted meal breaks no

27  later than their tenth hour of work for shifts lasting more than ten (10) hours.

28

**LAWYERS *for* JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

12

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

Defendants further failed to record meal periods and automatically deducted meal periods from Plaintiffs and putative class members' time records regardless of whether a compliant meal period was taken. This resulted in an underpayment of minimum and/or overtime wages to Plaintiffs and other class members.

39. Plaintiffs are informed and believe, and based thereon allege, that Defendants knew or should have known that Plaintiffs and the other class members were entitled to receive all meal periods or payment of one additional hour of pay at Plaintiffs' and the other class member's regular rate of pay when a meal period was missed, shortened, late, and/or interrupted, and they did not receive all meal periods or payment of one additional hour of pay at Plaintiffs' and the other class member's regular rate of pay when a meal period was missed, shortened, late, and/or interrupted.

40. Plaintiffs are informed and believe, and based thereon allege, that Defendants failed to provide, authorize, and permit Plaintiffs and other class members to take full, uninterrupted, off-duty rest periods for every shift lasting three and one-half (3.5) to six (6) hours and/or two full, uninterrupted, off-duty rest periods for every shift lasting six (6) to ten (10) hours, and failed to make a good faith effort to authorize, permit, and provide such rest breaks in the middle of each work period.

41. Plaintiffs are informed and believe, and based thereon allege, that Defendants knew or should have known that Plaintiffs and the other class members were entitled to receive all rest periods or payment of one additional hour of pay at Plaintiffs' and the other class members' regular rate of pay when a rest period was missed, shortened, late, and/or interrupted and they did not receive all rest periods or payment of one additional hour of pay at Plaintiffs' and the other class members' regular rate of pay when a rest period was missed, shortened, late, and/or interrupted.

13

**LAWYERS** *for* **JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

42.     Plaintiffs are informed and believe, and based thereon allege, that Defendants knew or should have known that Plaintiffs and the other class members were entitled to receive at least minimum wages for compensation and that they were not receiving at least minimum wages for all hours worked. Defendants' failure to pay minimum wages included, *inter alia*, Defendants' effective payment of zero dollars per hour for hours Plaintiffs and the other class members worked off-the-clock performing work duties, including, but not limited to, donning and doffing, responding to business-related inquiries, and completing time-sensitive company deadlines, and Defendants' implementation of an improper rounding procedure and automatically deducting meal periods from Plaintiffs' and putative class members' time records regardless of whether a compliant meal period was taken.

43.     Plaintiffs are informed and believe, and based thereon allege, that Plaintiffs and other class members worked more minutes per shift than Defendants credited them with having worked. Plaintiffs allege that Defendants' policy, practices, and/or procedure of "rounding" resulted in time during which Plaintiffs and the other class members were under control of Defendants but were not compensated.

44.     Plaintiffs are informed and believe, and based thereon allege, that Defendants knew or should have known that Plaintiffs and the other class members were entitled to receive all wages owed to them upon discharge or resignation, including minimum wages and meal and rest period premiums, and they did not, in fact, receive all such wages owed to them at the time of their discharge or resignation.

45.     Plaintiffs are informed and believe, and based thereon allege, that Defendants knew or should have known that Plaintiffs and the other class members were entitled to receive all wages owed to them during their employment.

14

Plaintiffs and the other class members did not receive payment of all wages, including minimum wages and meal and rest period premiums, within any time permissible under California Labor Code section 204.

46.   Plaintiffs are informed and believe, and based thereon allege, that Defendants knew or should have known that Plaintiffs and the other class members were entitled to receive complete and accurate wage statements in accordance with California law, but, in fact, they did not receive complete and accurate wage statements from Defendants.  The deficiencies included, *inter alia*, the failure to include the accurate total number of hours worked by Plaintiffs and the other class members and the accurate total amount of wages earned by Plaintiffs and the other class members.

47.   Plaintiffs are informed and believe, and based thereon allege, that Defendants knew or should have known that Defendants had to keep complete and accurate payroll records for Plaintiffs and the other class members in accordance with California law, but, in fact, did not keep complete and accurate payroll records. Defendants' failure included, *inter alia*, the failure to keep accurate records of the hours worked by Plaintiffs and the other class members.

48.   Plaintiffs are informed and believe, and based thereon allege, that Defendants knew or should have known that Plaintiffs and the other class members were entitled to reimbursement for all necessary business-related expenses, including without limitation, the use of personal phones for business-related purposes and costs incurred to comply with Defendants' dress code, including the costs of purchasing protective footwear and identification badges.

49.   Plaintiffs are informed and believe, and based thereon allege, that Defendants knew or should have known that they had a duty to compensate Plaintiffs and the other class members pursuant to California law, and that Defendants had the financial ability to pay such compensation, but willfully,

15

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

knowingly, and intentionally failed to do so, and falsely represented to Plaintiffs and the other class members that they were properly denied wages, all in order to increase Defendants' profits.

50.    At all material times set forth herein, Defendants failed to pay overtime wages to Plaintiffs and the putative class members for all hours worked.  Plaintiffs and the putative class members were required to work in excess of eight (8) hours in a day, forty (40) hours in a week, and/or six (6) days in a workweek. Plaintiffs and the putative class members did not receive overtime compensation at one-and-one-half times the regular rate of pay for all hours spent performing job duties in excess of eight (8) hours in a day, forty (40) hours in a week, and/or for the first eight (8) hours worked on the seventh day of work.

51.    At all material times set forth herein, Defendants failed to provide the requisite uninterrupted meal and rest periods to Plaintiffs and the other class members.

52.    At all material times set forth herein, Defendants failed to pay Plaintiffs and the other class members at least minimum wages for all hours worked.

53.    At all material times set forth herein, Defendants failed to pay Plaintiffs and the other class members all wages owed to them upon discharge or resignation.

54.    At all material times set forth herein, Defendants failed to pay Plaintiffs and the other class members all wages within any time permissible under California law, including, *inter alia*, California Labor Code section 204.

55.    At all material times set forth herein, Defendants failed to provide complete or accurate wage statements to Plaintiffs and the other class members.

56.    At all material times set forth herein, Defendants failed to keep complete or accurate payroll records for Plaintiffs and the other class members.

1    57.    At all material times set forth herein, Defendants failed to reimburse

2    Plaintiffs and the other class members for necessary business-related expenses and

3    costs.

4    58.    At all material times set forth herein, Defendants failed to properly

5    compensate Plaintiffs and the other class members pursuant to California law in

6    order to increase Defendants' profits.

7    59.    California Labor Code section 218 states that nothing in Article 1 of

8    the Labor Code shall limit the right of any wage claimant to "sue directly . . . for

9    any wages or penalty due to him [or her] under this article."

## FIRST CAUSE OF ACTION

### (Violation of California Labor Code §§ 226.7 and 512(a))

### (Against HITCO CARBON COMPOSITES, INC. and DOES 1 through 100)

13   60.    Plaintiffs incorporate by reference the allegations contained in

14   paragraphs 1 through 59, and each and every part thereof with the same force and

15   effect as though fully set forth herein.

16   61.    At all relevant times, the IWC Order and California Labor Code

17   sections 226.7 and 512(a) were applicable to Plaintiffs' and the other class

18   members' employment by Defendants.

19   62.    At all relevant times, California Labor Code section 226.7 provides

20   that no employer shall require an employee to work during any meal or rest period

21   mandated by an applicable order of the California IWC.

22   63.    At all relevant times, the applicable IWC Wage Order and California

23   Labor Code section 512(a) provide that an employer may not require, cause or

24   permit an employee to work for a work period of more than five (5) hours per day

25   without providing the employee with a meal period of not less than thirty (30)

26   minutes, except that if the total work period per day of the employee is no more

27   than six (6) hours, the meal period may be waived by mutual consent of both the

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

28

17

**THIRD AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND ENFORCEMENT UNDER THE PRIVATE ATTORNEYS GENERAL ACT, CALIFORNIA LABOR CODE § 2698, ET SEQ. AND DEMAND FOR JURY TRIAL**

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

1    employer and employee.

2        64.    At all relevant times, the applicable IWC Wage Order and California

3    Labor Code section 512(a) further provide that an employer may not require, cause

4    or permit an employee to work for a work period of more than ten (10) hours per

5    day without providing the employee with a second uninterrupted meal period of

6    not less than thirty (30) minutes, except that if the total hours worked is no more

7    than twelve (12) hours, the second meal period may be waived by mutual consent

8    of the employer and the employee only if the first meal period was not waived.

9        65.    During the relevant time period, Plaintiffs and the other class members

10   who were scheduled to work for a period of time no longer than six (6) hours, and

11   who did not waive their legally-mandated meal periods by mutual consent, were

12   required to work for periods longer than five (5) hours without an uninterrupted

13   meal period of not less than thirty (30) minutes and/or rest period.

14       66.    During the relevant time period, Plaintiffs and the other class members

15   who were scheduled to work for a period of time in excess of six (6) hours were

16   required to work for periods longer than five (5) hours without an uninterrupted

17   meal period of not less than thirty (30) minutes and/or rest period.

18       67.    During the relevant time period, Plaintiffs' and the other class

19   members' meal periods were missed, shortened, late, and/or were interrupted

20   because Defendants required them to perform work duties including, but not

21   limited to, donning and doffing, responding to business related inquiries and

22   instructions and meeting time-sensitive company deadlines.  Plaintiffs and the

23   other class members were required to complete tasks, such as repairs, by strict,

24   time-sensitive deadlines set by Defendants prior to beginning meal periods, even

25   when it resulted in late or missed meal periods.  Defendants interrupted Plaintiffs

26   and the other class members during purported meal periods with business-related

27   inquiries, instructions for tasks, and/or to require them to return to work before a

28

**THIRD AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND ENFORCEMENT UNDER
THE PRIVATE ATTORNEYS GENERAL ACT, CALIFORNIA LABOR CODE § 2698, ET SEQ. AND
DEMAND FOR JURY TRIAL**

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

full thirty (30) minutes elapsed to complete or begin tasks. For shifts worked in excess of ten (10) hours in a day, Defendants did not have a policy or practice of providing any additional meal periods. For example, Defendants automatically deducted meal periods from Plaintiffs' and putative class members' time records regardless of whether a compliant meal period was taken.

68.   As a result, Defendants failed to relieve Plaintiffs and the other class members of all duties, failed to relinquish control over Plaintiffs' and the other class members' activities, failed to permit Plaintiffs and the other class members a reasonable opportunity to take, and impeded or discouraged them from taking thirty (30) minute uninterrupted meal periods no later than the end of their fifth hour of work for shifts lasting at least six (6) hours, and/or to take second thirty (30) minute uninterrupted meal periods no later than their tenth hour of work for shifts lasting more than ten (10) hours.

69.   As a result, during the relevant time period, Defendants intentionally and willfully required Plaintiffs and the other class members to work during meal periods and failed to compensate Plaintiffs and the other class members the full meal period premium for work performed during meal periods.

70.   During the relevant time period, Defendants failed to pay Plaintiffs and the other class members the full meal period premium due pursuant to California Labor Code section 226.7.

71.   Defendants' conduct violates applicable IWC Wage Order and California Labor Code sections 226.7 and 512(a).

72.   Pursuant to applicable IWC Wage Order and California Labor Code section 226.7(b), Plaintiffs and the other class members are entitled to recover from Defendants one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided.

///

19

**THIRD AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND ENFORCEMENT UNDER THE PRIVATE ATTORNEYS GENERAL ACT, CALIFORNIA LABOR CODE § 2698, ET SEQ. AND DEMAND FOR JURY TRIAL**

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

## SECOND CAUSE OF ACTION

### (Violation of California Labor Code § 226.7)

### (Against HITCO CARBON COMPOSITES, INC. and DOES 1 through 100)

73.     Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 72, and each and every part thereof with the same force and effect as though fully set forth herein.

74.     At all times herein set forth, the applicable IWC Wage Order and California Labor Code section 226.7 were applicable to Plaintiffs and the other class members' employment by Defendants.

75.     At all relevant times, California Labor Code section 226.7 provides that no employer shall require an employee to work during any rest period mandated by an applicable order of the California IWC.

76.     At all relevant times, the applicable IWC Wage Order provides that "[e]very employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period" and that the "rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof" unless the total daily work time is less than three and one-half (3 ½) hours.

77.     During the relevant time period, Defendants required Plaintiffs and other class members to work three and one-half (3 ½) or more hours without authorizing or permitting a ten (10) minute rest period per each four (4) hour period, or major fraction thereof, worked.

78.     During the relevant time period, Defendants did not provide Plaintiffs and the other class members ten (10) minute rest periods when they worked shifts of at least three and one-half (3 ½) hours but less than four (4) hours in length.

///

///

**THIRD AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND ENFORCEMENT UNDER THE PRIVATE ATTORNEYS GENERAL ACT, CALIFORNIA LABOR CODE § 2698, ET SEQ. AND DEMAND FOR JURY TRIAL**

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

79.   During the relevant time period, Plaintiffs' and the other class members' rest periods were missed, shortened, late, and/or interrupted because Defendants required them to perform work duties including, but not limited to, donning and doffing, responding to business related inquiries and instructions, and completing time-sensitive company deadlines.  For example, Plaintiffs and the other class members were required to complete tasks, such as repairs, by strict, time-sensitive deadlines set by Defendants prior to beginning rest periods, even when it resulted in late or missed rest periods.  Defendants interrupted Plaintiffs and the other class members during rest periods with business-related inquiries and instructions, including instructions to return to work before a full and complete ten (10) minutes net rest had elapsed.

80.   As a result, Defendants failed to provide, authorize, and/or permit Plaintiffs and other class members to take full, uninterrupted, off-duty rest periods for every shift lasting three and one-half (3 ½) to six (6) hours and/or two full, uninterrupted, off-duty rest periods for every shift lasting six (6) to ten (10) hours, and/or three full, uninterrupted, off-duty rest periods for every shift lasting ten (10) to fourteen (14) hours and failed to make a good faith effort to authorize, permit, and provide such rest breaks in the middle of each work period.

81.   During the relevant time period, Defendants willfully required Plaintiffs and the other class members to work during rest periods and failed to pay Plaintiffs and the other class members the full rest period premium for work performed during rest periods.

82.   During the relevant time period, Defendants failed to pay Plaintiffs and the other class members the full rest period premium due pursuant to California Labor Code section 226.7

83.   Defendants' conduct violates applicable IWC Wage Orders and California Labor Code section 226.7.

21

**THIRD AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND ENFORCEMENT UNDER THE PRIVATE ATTORNEYS GENERAL ACT, CALIFORNIA LABOR CODE § 2698, ET SEQ. AND DEMAND FOR JURY TRIAL**

84.     Pursuant to the applicable IWC Wage Orders and California Labor Code section 226.7(b), Plaintiffs and the other class members are entitled to recover from Defendants one additional hour of pay at the employees' regular hourly rate of compensation for each work day that the rest period was not provided.

## THIRD CAUSE OF ACTION

### (Violation of California Labor Code §§ 1194 and 1197)

### (Against HITCO CARBON COMPOSITES, INC. and DOES 1 through 100)

85.     Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 84, and each and every part thereof with the same force and effect as though fully set forth herein.

86.     At all relevant times, California Labor Code sections 1194 and 1197 provide that the minimum wage to be paid to employees, and the payment of a lesser wage than the minimum so fixed is unlawful.

87.     During the relevant time period, Defendants failed to pay minimum wage to Plaintiffs and the other class members as required, pursuant to California Labor Code sections 1194 and 1197. Defendants' failure to pay minimum wages included, *inter alia,* Defendants' effective payment of zero dollars per hour for hours Plaintiffs and the other class members worked off-the-clock performing work duties, including, but not limited to, donning and doffing, responding to business-related inquiries, and completing time-sensitive company deadlines. Defendant also failed to pay minimum wages for all time worked by implementing an improper rounding procedure and automatically deducting meal periods from Plaintiffs' and other class members' time records regardless of whether a compliant meal period was taken.

///

///

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

88.   Defendants' failure to pay Plaintiffs and the other class members the minimum wage as required violates California Labor Code sections 1194 and 1197.  Pursuant to those sections Plaintiffs and the other class members are entitled to recover the unpaid balance of their minimum wage compensation as well as interest, costs, and attorney's fees, and liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon.

89.   Pursuant to California Labor Code section 1194.2, Plaintiffs and the other class members are entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon.

## FOURTH CAUSE OF ACTION

**(Violation of California Labor Code §§ 201 and 202)**

**(Against HITCO CARBON COMPOSITES, INC. and DOES 1 through 100)**

90.   Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 89, and each and every part thereof with the same force and effect as though fully set forth herein.

91.   At all relevant times herein set forth, California Labor Code sections 201 and 202 provide that  if an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately, and if an employee quits his or her employment, his or her wages shall become due and payable not later than seventy-two (72) hours thereafter, unless the employee has given seventy-two (72) hours' notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting.

92.   During the relevant time period, Defendants intentionally and willfully failed to pay Plaintiffs and the other class members who were discharged their wages, earned and unpaid, immediately at the time of their discharge. Plaintiffs and other class members were not paid at the time of their discharge wages earned and unpaid throughout their employment, including but not limited

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

23

to, minimum wages for time worked off-the-clock to perform work duties including donning and doffing, responding to business-related inquiries, completing time-sensitive company deadlines and for meal and rest period premium payments, and as a result of Defendants' improper rounding procedure and automatic deduction of meal periods regardless of whether a compliant meal period was taken.

93.    During the relevant time period, Defendants intentionally and willfully failed to pay other class members who quit their employment with Defendants with less than seventy-two (72) hours' notice their wages, earned and unpaid, within seventy-two (72) hours of their leaving Defendants' employ. Other class members were not given at the time of leaving Defendants' employ all of the wages earned and unpaid throughout their employment, including but not limited to, minimum wages for time worked off-the-clock completing work duties including donning and doffing, responding to business-related inquiries, and completing time-sensitive company deadlines, and for meal and rest period premium payments, and as a result of Defendants' improper rounding procedure and automatic deduction of meal periods regardless of whether a compliant meal period was taken.

94.    Defendants' failure to pay Plaintiffs and the other class members who are no longer employed by Defendants' their wages, earned and unpaid, within seventy-two (72) hours of their leaving Defendants' employ, is in violation of California Labor Code sections 201 and 202.

95.    California Labor Code section 203 provides that if an employer willfully fails to pay wages owed, in accordance with sections 201 and 202, then the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action is commenced; but the wages shall not continue for more than thirty (30) days.

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

**LAWYERS** *for* **JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

96.    Plaintiffs and the other class members are entitled to recover from Defendants the statutory penalty wages for each day they were not paid, up to a thirty (30) day maximum pursuant to California Labor Code section 203.

## FIFTH CAUSE OF ACTION

### (Violation of California Labor Code § 226(a))

### (Against HITCO CARBON COMPOSITES, INC. and DOES 1 through 100)

97.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 96, and each and every part thereof with the same force and effect as though fully set forth herein.

98.    At all material times set forth herein, California Labor Code section 226(a) provides that every employer shall furnish each of his or her employees an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and his or her social security number, (8) the name and address of the legal entity that is the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.  The deductions made from payments of wages shall be recorded in ink or other indelible form, properly dated, showing the month, day, and year, and a copy of the statement or a record of the deductions shall be kept on file by the employer for at least three years at the place of employment or at a central location within the State of California.

///

///

25

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

99.    Defendants have intentionally and willfully failed to provide Plaintiffs and the other class members with complete and accurate wage statements.  The deficiencies include, but are not limited to: the failure to include the accurate total number of hours worked by Plaintiffs and the other class members and the gross and net wages earned.  As Defendants willfully required work to be performed off the clock and failed to provide, authorize, and/or permit meal and rest periods or to pay the premium wages owed for such failure, Defendants had the information necessary to provide wage statements that accurately reflected the total number of hours actually worked and the actual gross and net wages that were earned, yet failed to do so on a systematic basis and instead provided wage statements that did not reflect the time worked off the clock or any meal and rest period premiums earned.

100.    As a result of Defendants' violation of California Labor Code section 226(a), Plaintiffs and the other class members have suffered injury and damage to their statutorily-protected rights.  Because Plaintiffs and the putative class members' wage statements did not reflect the accurate number of regular hours worked and the gross and net wages actually earned, Plaintiffs and the putative class members were unable to determine the total amount of hours they worked, were unable to determine the total amount of compensation they were owed, and were unable to verify they were paid the proper amount.  In order to determine how much Plaintiffs and the putative class members should have been paid, Plaintiffs and the putative class members would have had to engage in discovery and mathematical computations in order to reconstruct the missing information.

101.   More specifically, Plaintiffs and the other class members have been injured by Defendants' intentional and willful violation of California Labor Code section 226(a) because they were denied both their legal right to receive, and their protected interest in receiving, accurate and itemized wage statements pursuant to

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

1  California Labor Code section 226(a).

2      102.  Plaintiffs and the other class members are entitled to recover from

3  Defendants the greater of their actual damages caused by Defendants' failure to

4  comply with California Labor Code section 226(a).

5                      **SIXTH CAUSE OF ACTION**

6              **(Violation of California Labor Code §§ 2800 and 2802)**

7  **(Against HITCO CARBON COMPOSITES, INC. and DOES 1 through 100)**

8      103.  Plaintiffs incorporate by reference the allegations contained in

9  paragraphs 1 through 102, and each and every part thereof with the same force and

10  effect as though fully set forth herein.

11      104.  Pursuant to California Labor Code sections 2800 and 2802, an

12  employer must reimburse its employee for all necessary expenditures incurred by

13  the employee in direct consequence of the discharge of his or her job duties or in

14  direct consequence of his or her job duties or in direct consequence of his or her

15  obedience to the directions of the employer.

16      105.  Plaintiffs and the other class members incurred necessary business-

17  related expenses and costs throughout the duration of their employment that were

18  not fully reimbursed by Defendants, including but not limited to the use of personal

19  phones for business-related purposes and costs incurred to comply with

20  Defendants' dress code, including the costs of purchasing protective footwear, as

21  well as the cost of purchasing identification badges.

22      106.  Defendants have intentionally and willfully failed to reimburse

23  Plaintiffs and the other class members for all necessary business-related expenses

24  and costs. Plaintiffs and the other class members are entitled to recover from

25  Defendants their business-related expenses and costs incurred during the course

26  and scope of their employment, plus interest accrued from the date on which the

27  employee incurred the necessary expenditures at the same rate as judgments in

28

27

**THIRD AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND ENFORCEMENT UNDER THE PRIVATE ATTORNEYS GENERAL ACT, CALIFORNIA LABOR CODE § 2698, ET SEQ. AND DEMAND FOR JURY TRIAL**

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

1  civil actions in the State of California.

2  **SEVENTH CAUSE OF ACTION**

3  **(Violation of California Business & Professions Code §§ 17200, et seq.)**

4  **(Against HITCO CARBON COMPOSITES, INC. and DOES 1 through 100)**

5  107.  Plaintiffs incorporate by reference the allegations contained in

6  paragraphs 1 through 106, and each and every part thereof with the same force and

7  effect as though fully set forth herein.

8  108.  Defendants' conduct, as alleged herein, has been, and continues to be,

9  unfair, unlawful and harmful to Plaintiffs, other class members, to the general

10  public, and Defendants' competitors.  Accordingly, Plaintiffs seek to enforce

11  important rights affecting the public interest within the meaning of Code of Civil

12  Procedure section 1021.5.

13  109.  Defendants' activities as alleged herein are violations of California

14  law, and constitute unlawful business acts and practices in violation of California

15  Business & Professions Code section 17200, et seq.

16  110.  A violation of California Business & Professions Code section 17200,

17  et seq. may be predicated on the violation of any state or federal law.  In this instant

18  case, Defendants' policies and practices of requiring employees, including

19  Plaintiffs and the other class members, to work through their meal and rest periods

20  without paying them proper compensation violate California Labor Code sections

21  226.7 and 512(a).  Defendants' policies and practices of failing to pay minimum

22  wages violate California Labor Code sections 1194 and 1197.  Moreover,

23  Defendants' policies and practices of failing to timely pay wages to Plaintiffs and

24  the other class members violate California Labor Code sections 201, and 202.

25  Defendants also violated California Labor Code sections 226(a), 2800 and 2802.

26  111.  As a result of the herein described violations of California law,

27  Defendants unlawfully gained an unfair advantage over other businesses.

28

**THIRD AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND ENFORCEMENT UNDER THE PRIVATE ATTORNEYS GENERAL ACT, CALIFORNIA LABOR CODE § 2698, ET SEQ. AND DEMAND FOR JURY TRIAL**

112.  Plaintiffs and the other class members have been personally injured by Defendants' unlawful business acts and practices as alleged herein, including but not necessarily limited to the loss of money and/or property.

113.  Pursuant to California Business & Professions Code sections 17200, et seq., Plaintiffs and the other class members are entitled to restitution of the wages withheld and retained by Defendants during a period that commences August 29, 2012; an award of attorneys' fees pursuant to California Code of Civil procedure section 1021.5 and other applicable laws; and an award of costs.

## EIGHTH CAUSE OF ACTION

### (Violation of California Labor Code §§ 2698, et seq.)

### (Against HITCO CARBON COMPOSITES, INC. and DOES 1 through 100)

114.  Plaintiff STERLING incorporates by reference the allegations contained in paragraphs 1 through 113, and each and every part thereof with the same force and effect as though fully set forth herein.

115.  PAGA expressly establishes that any provision of the California Labor Code which provides for a civil penalty to be assessed and collected by the LWDA, or any of its departments, divisions, commissions, boards, agencies or employees for a violation of the California Labor Code, may be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself, and other current or former employees.

116.  Whenever the LWDA, or any of its departments, divisions, commissions, boards, agencies, or employees has discretion to assess a civil penalty, a court in a civil action is authorized to exercise the same discretion, subject to the same limitations and conditions, to assess a civil penalty.

117.  Plaintiff STERLING and the other hourly-paid or non-exempt employees, are "aggrieved employees" as defined by California Labor Code section 2699(c) in that they are all current or former employees of Defendants, and

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

29

1   one or more of the alleged violations was committed against them.

2                        **Failure to Pay Overtime**

3        118.   Defendants' failure to pay legally required overtime wages to Plaintiff

4   STERLING and the other aggrieved employees is in violation of the Wage Orders

5   and constitutes unlawful or unfair activity prohibited by California Labor Code

6   sections 510 and 1198.

7                    **Failure to Provide Meal Periods**

8        119.  Defendants' failure to provide legally required meal periods to

9   Plaintiff STERLING and the other aggrieved employees is in violation of the Wage

10  Orders and constitutes unlawful or unfair activity prohibited by California Labor

11  Code sections 226.7 and 512(a).

12                    **Failure to Provide Rest Periods**

13       120.   Defendants' failure to provide legally required rest periods to Plaintiff

14  STERLING and the other aggrieved employees is in violation of the Wage Orders

15  and constitutes unlawful or unfair activity prohibited by California Labor Code

16  section 226.7.

17                    **Failure to Pay Minimum Wages**

18       121.   Defendants' failure to pay legally required minimum wages to

19  Plaintiff STERLING and the other aggrieved employees is in violation of the Wage

20  Orders and constitutes unlawful or unfair activity prohibited by California Labor

21  Code sections 1194, 1197 and 1197.1.

22              **Failure to Timely Pay Wages Upon Termination**

23       122.   Defendants' failure to timely pay wages to Plaintiff STERLING and

24  the other aggrieved employees upon termination in accordance with Labor Code

25  sections 201 and 202 constitutes unlawful and/or unfair activity prohibited by

26  California Labor Code sections 201 and 202.

27  ///

28

**LAWYERS** *for* **JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

30

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

**Failure to Timely Pay Wages During Employment**

123.   Defendants' failure to timely pay wages to Plaintiff STERLING and the other aggrieved employees during employment in accordance with Labor Code section 204 constitutes unlawful and/or unfair activity prohibited by California Labor Code section 204.

**Failure to Provide Complete and Accurate Wage Statements**

124.   Defendants' failure to provide complete and accurate wage statements to Plaintiff STERLING and the other aggrieved employees in accordance with Labor Code section 226(a) constitutes unlawful and/or unfair activity prohibited by California Labor Code section 226(a).

**Failure to Keep Complete and Accurate Payroll Records**

125.   Defendants' failure to keep complete and accurate payroll records relating to Plaintiff STERLING and the other aggrieved employees in accordance with California Labor Code section 1174(d) constitutes unlawful and/or unfair activity prohibited by California Labor Code section 1174(d).

**Failure to Reimburse Necessary Business-Related Expenses and Costs**

126.   Defendants' failure to reimburse Plaintiff STERLING and the other aggrieved employees for necessary business-related expenses and costs in accordance with California Labor Code sections 2800 and 2802 constitutes unlawful and/or unfair activity prohibited by California Labor Code sections 2800 and 2802.

127.   Pursuant to California Labor Code section 2699, Plaintiff STERLING, individually, and on behalf of all aggrieved employees, requests and is entitled to recover from Defendants and each of them, business expenses, unpaid wages, and/or untimely wages according to proof, interest, attorneys' fees and costs pursuant to California Labor Code section 218.5, as well as all statutory penalties against Defendants, and each of them, including but not limited to:

**THIRD AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND ENFORCEMENT UNDER THE PRIVATE ATTORNEYS GENERAL ACT, CALIFORNIA LABOR CODE § 2698, ET SEQ. AND DEMAND FOR JURY TRIAL**

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

     a.     Penalties under California Labor Code section 2699 in the amount of a hundred dollars ($100) for each aggrieved employee per pay period for the initial violation, and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation;

     b.     Penalties under California Code of Regulations Title 8 section 11010, *et seq.* in the amount of fifty dollars ($50) for each aggrieved employee per pay period for the initial violation, and one hundred dollars ($100) for each aggrieved employee per pay period for each subsequent violation;

     c.     Penalties under California Labor Code section 210 in addition to, and entirely independent and apart from, any other penalty provided in the California Labor Code in the amount of a hundred dollars ($100) for each aggrieved employee per pay period for the initial violation, and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation; and

     d.     Any and all additional penalties and sums as provided by the California Labor Code and/or other statutes.

128. Pursuant to California Labor Code section 2699(i), civil penalties recovered by aggrieved employees shall be distributed as follows: seventy-five percent (75%) to the Labor and Workforce Development Agency for the enforcement of labor laws and education of employers and employees about their rights and responsibilities and twenty-five percent (25%) to the aggrieved employees.

129. Further, Plaintiff STERLING is entitled to seek and recover reasonable attorneys' fees and costs pursuant to California Labor Code sections

32

210, 218.5 and 2699 and any other applicable statute.

## DEMAND FOR JURY TRIAL

Plaintiff DAWSON, individually, and on behalf of other members of the general public similarly situated, and Plaintiff STERLING, individually and on behalf of other members of the general public similarly situated and on behalf of other aggrieved employees pursuant to the California Private Attorneys General Act, request a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff DAWSON, individually and on behalf of all other members of the general public similarly situated, and Plaintiff STERLING, individually and on behalf of other members of the general public similarly situated and on behalf of other aggrieved employees pursuant to the California Private Attorneys General Act, pray for relief and judgment against Defendants, jointly and severally, as follows:

### Class Certification

1.     That this action be certified as a class action;

2.     That Plaintiff DAWSON be appointed as the representative of the Class as to the first seven causes of action;

3.     That Plaintiff STERLING be appointed as the representative of the Class as to all causes of action;

4.     That counsel for Plaintiffs be appointed as Class Counsel; and

5.     That Defendants provide to Class Counsel immediately the names and most current/last known contact information (address, e-mail and telephone numbers) of all class members.

///

///

///

**LAWYERS** *for* **JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

**THIRD AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND ENFORCEMENT UNDER THE PRIVATE ATTORNEYS GENERAL ACT, CALIFORNIA LABOR CODE § 2698, ET SEQ. AND DEMAND FOR JURY TRIAL**

**LAWYERS** *for* **JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

## As to the First Cause of Action

6.      That the Court declare, adjudge and decree that Defendants violated California Labor Code sections 226.7 and 512 and applicable IWC Wage Orders by willfully failing to provide all meal periods (including second meal periods) to Plaintiffs and the other class members;

7.      That the Court make an award to Plaintiffs and the other class members of one (1) hour of pay at each employee's regular rate of compensation for each workday that a meal period was not provided;

8.      For all actual, consequential, and incidental losses and damages, according to proof;

9.      For premium wages pursuant to California Labor Code section 226.7(b);

10.      For pre-judgment interest on any unpaid wages from the date such amounts were due;

11.      For reasonable attorneys' fees and costs of suit incurred herein; and

12.      For such other and further relief as the Court may deem just and proper.

## As to the Second Cause of Action

13.      That the Court declare, adjudge and decree that Defendants violated California Labor Code section 226.7 and applicable IWC Wage Orders by willfully failing to provide all rest periods to Plaintiffs and the other class members;

14.      That the Court make an award to Plaintiffs and the other class members of one (1) hour of pay at each employee's regular rate of compensation for each workday that a rest period was not provided;

15.      For all actual, consequential, and incidental losses and damages, according to proof;

///

34

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

16.    For premium wages pursuant to California Labor Code section 226.7(b);

17.    For pre-judgment interest on any unpaid wages from the date such amounts were due; and

18.    For such other and further relief as the Court may deem just and proper.

### As to the Third Cause of Action

19.    That the Court declare, adjudge and decree that Defendants violated California Labor Code sections 1194 and 1197 by willfully failing to pay minimum wages to Plaintiffs and the other class members;

20.    For general unpaid wages and such general and special damages as may be appropriate;

21.    For pre-judgment interest on any unpaid compensation from the date such amounts were due;

22.    For reasonable attorneys' fees and costs of suit incurred herein pursuant to California Labor Code section 1194(a);

23.    For liquidated damages pursuant to California Labor Code section 1194.2; and

24.    For such other and further relief as the Court may deem just and proper.

### As to the Fourth Cause of Action

25.    That the Court declare, adjudge and decree that Defendants violated California Labor Code sections 201, 202, and 203 by willfully failing to pay all compensation owed at the time of termination of the employment of Plaintiffs and the other class members no longer employed by Defendants;

26.    For all actual, consequential, and incidental losses and damages, according to proof;

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

27.    For statutory wage penalties pursuant to California Labor Code section 203 for Plaintiffs and the other class members who have left Defendants' employ;

28.    For pre-judgment interest on any unpaid compensation from the date such amounts were due; and

29.    For such other and further relief as the Court may deem just and proper.

### As to the Fifth Cause of Action

30.    That the Court declare, adjudge and decree that Defendants violated the record keeping provisions of California Labor Code section 226(a) and applicable IWC Wage Orders as to Plaintiffs and the other class members, and willfully failed to provide accurate itemized wage statements thereto;

31.    For actual, consequential and incidental losses and damages, according to proof; and

32.    For such other and further relief as the Court may deem just and proper.

### As to the Sixth Cause of Action

33.    That the Court declare, adjudge and decree that Defendants violated California Labor Code sections 2800 and 2802 by willfully failing to reimburse Plaintiffs and the other class members for all necessary business-related expenses as required by California Labor Code sections 2800 and 2802;

34.    For actual, consequential and incidental losses and damages, according to proof;

35.    For the imposition of civil penalties and/or statutory penalties;

36.    For reasonable attorneys' fees and costs of suit incurred herein; and

37.    For such other and further relief as the Court may deem just and proper.

**THIRD AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND ENFORCEMENT UNDER THE PRIVATE ATTORNEYS GENERAL ACT, CALIFORNIA LABOR CODE § 2698, ET SEQ. AND DEMAND FOR JURY TRIAL**

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

## As to the Seventh Cause of Action

38.   That the Court decree, adjudge and decree that Defendants violated California Business and Professions Code sections 17200, et seq. by failing to provide all meal and rest periods to Plaintiffs and the other class members, failing to pay at least minimum wages to Plaintiffs and the other class members, failing to pay Plaintiffs' and the other class members' wages timely as required by California Labor Code section 201, and 202 and by violating California Labor Code sections 226(a), 2800 and 2802.

39.   For restitution of unpaid wages to Plaintiffs and all the other class members and all pre-judgment interest from the day such amounts were due and payable;

40.   For the appointment of a receiver to receive, manage and distribute any and all funds disgorged from Defendants and determined to have been wrongfully acquired by Defendants as a result of violation of California Business and Professions Code sections 17200, et seq.;

41.   For reasonable attorneys' fees and costs of suit incurred herein pursuant to California Code of Civil Procedure section 1021.5; and

42.   For such other and further relief as the Court may deem just and proper.

## As to the Eighth Cause of Action

43.  For civil penalties and wages pursuant to California Labor Code sections 2699(a), (f) and (g) and 558 plus costs and attorneys' fees for violation of California Labor Code sections 201, 202, 203, 204, 226(a), 226.7, 510, 512, 551, 552, 1174(d), 1194, 1197, 1197.1, 1198, 2800, and 2802; and

///

///

///

37

**THIRD AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND ENFORCEMENT UNDER THE PRIVATE ATTORNEYS GENERAL ACT, CALIFORNIA LABOR CODE § 2698, ET SEQ. AND DEMAND FOR JURY TRIAL**

44.  For such other and further relief as the Court may deem equitable and appropriate.

Dated: _____, 2019          **LAWYERS *for* JUSTICE, PC**

By:_____
    Edwin Aiwazian
    *Attorneys for* Plaintiffs

**THIRD AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND ENFORCEMENT UNDER THE PRIVATE ATTORNEYS GENERAL ACT, CALIFORNIA LABOR CODE § 2698, ET SEQ. AND DEMAND FOR JURY TRIAL**

**EXHIBIT B**



LAWYERS FOR

# JUSTICE
A PROFESSIONAL CORPORATION

January 28, 2019

*BY FILING ON THE CALIFORNIA LABOR & WORKFORCE DEVELOPMENT AGENCY'S ONLINE PAGA FILING SYSTEM*

California Labor & Workforce Development Agency

> **Re:   HITCO CARBON COMPOSITES, INC.**

Dear Representative:

We have been retained to represent Darryl Sterling against HITCO Carbon Composites, Inc. (including any and all affiliates, subsidiaries, parents, directors, officers, and employees) (collectively referred to as "HITCO") for violations of California wage-and-hour laws.   Mr. Sterling seeks penalties for violations of the California Labor Code, which are recoverable under California Labor Code section 2698, et seq., the Labor Code Private Attorneys General Act of 2004 ("PAGA") and all other remedies available under PAGA, including an amount sufficient to recover underpaid wages pursuant to Labor Code section 558.

Mr. Sterling seeks these remedies on behalf of the State of California and "aggrieved employees," as defined herein.   This letter is sent in compliance with the reporting requirements of California Labor Code section 2699.3.

Mr. Sterling contends that HITCO employed him as an hourly-paid, non-exempt employee from approximately May 2011 to approximately December 2017, in the State of California.

The "aggrieved employees" that Mr. Sterling may seek penalties on behalf of are all current and former hourly-paid or non-exempt employees who worked for any of the above-referenced entities within the State of California.

During the relevant time period, HITCO employed Mr. Sterling as an hourly-paid, non-exempt employee.   The "aggrieved employees" that Mr. Sterling seeks penalties on behalf of are all current and former hourly-paid or non-exempt employees who worked for HITCO within the State of California.

Based on the following facts and theories, HITCO has violated and/or continues to violate, among other provisions of the California Labor Code and applicable wage law, California Labor Code sections 201, 202, 203, 204, 226, 226.7, 510, 512, 551, 552, 558, 1174, 1194, 1194.2, 1197, 1197.1, 1198, 2800 and 2802, and IWC Wage Orders including *inter alia*, Wage Orders 1-2001, 4-2001, 9-2001, and 16-2001.

HITCO required aggrieved employees to perform work off-the-clock before their scheduled shifts, after their scheduled shifts, and during meal breaks, as well as to perform work during rest breaks, and to report to work without being put to work or paid reporting time pay, and as a result, HITCO failed to properly compensate aggrieved employees for all time worked.   For

example, HITCO required Mr. Sterling and other aggrieved employees to don and doff personal protective equipment, assemble and disassemble parts, operate the fork lift and crane, clean, mixing material to create the beams, prepare the molds, store and retrieve belongings, receive and respond to business-related calls, and schedule the production of beams during meal and rest periods and before clocking in and after clocking out of their shifts.

California Labor Code sections 510 and 1198 require employers to pay time-and-a-half or double time overtime wages, and make it unlawful to work employees for hours longer than eight hours in one day and/or over forty hours in one week, and/or more than six (6) consecutive days in one week, without paying the premium overtime rates at one-and-one-half times or double the regular rate of pay, including additional remuneration. During the relevant time period, Mr. Sterling and other aggrieved employees worked in excess of 8 hours in a day, 40 hours in a week, and/or 6 days in a workweek. Therefore, Mr. Sterling and other aggrieved employees were entitled to receive certain wages for overtime compensation, but they were not paid for all overtime hours worked. HITCO failed to compensate aggrieved employees at one-and-one half times the appropriate regular rate of pay, instead paying them only their base hourly rate, or at times less than that rate, for hours worked in excess of 8 hours in a day, 40 hours in a week, and/or 6 days in a workweek. HITCO also engaged in an improper rounding policy that consistently operated against the aggrieved employees and resulted in a net loss of pay to aggrieved employees.

California Labor Code sections 226.7 and 512 require employers to pay an employee one additional hour of pay at the employee's regular rate for each meal or rest period that is not provided. During the relevant time period, HITCO required Mr. Sterling and other aggrieved employees to work during meal and rest periods and failed to compensate them properly for non-compliant meal and rest periods including, *inter alia*, short, late, interrupted, and missed meal and rest periods. HITCO required aggrieved employees to remain on premises for rest breaks, failed to relieve aggrieved employees of all duties and relinquish control over how they spent their meal and rest breaks, and failed to provide compliant first and second meal periods. Further, HITCO failed to record aggrieved employees meal periods and automatically deducted meal periods regardless of whether Plaintiff and putative class members took a compliant meal period.

California Labor Code sections 201 and 202 provide that if an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately, and if an employee quits his or her employment, his or her wages shall become due and payable not later than seventy-two (72) hours thereafter, unless the employee has given seventy-two (72) hours' notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting. During the relevant time period, HITCO failed to pay Mr. Sterling and other aggrieved employees all wages due to them within any time period specified by California Labor Code sections 201 and 202. California Labor Code section 203 provides that if an employer willfully fails to pay the wages of an employee who is discharged or quits, the wages of the employee will continue as a penalty from the day due at the same rate until paid or until an action is commenced. During the relevant time period, HITCO willfully failed to pay the wages due to Mr. Sterling and other aggrieved employees who were discharged or quit, and also failed to pay penalties which accrued due to its willful failure to timely pay wages.

**3 |** P a g e

California Labor Code section 204 requires that all wages earned by any person in any employment between the 1st and the 15th days, inclusive, of any calendar month, other than those wages due upon termination of an employee, are due and payable between the 16th and the 26th day of the month during which the labor was performed, and that all wages earned by any person in any employment between the 16th and the last day, inclusive, of any calendar month, other than those wages due upon termination of an employee, are due and payable between the 1st and the 10th day of the following month. California Labor Code section 204 also requires that all wages earned for labor in excess of the normal work period shall be paid no later than the payday for the next regular payroll period. During the relevant time period, HITCO failed to pay Mr. Sterling and other aggrieved employees all wages due to them within any time period specified by California Labor Code section 204.

California Labor Code section 226 requires employers to make, keep and provide complete and accurate itemized wage statements to their employees. During the relevant time period, HITCO did not provide Mr. Sterling and other aggrieved employees with complete and accurate itemized wage statements. The wage statements they received from HITCO were in violation of California Labor Code section 226(a). The violations include, but are not limited to, the failure to include the total hours worked by Mr. Sterling and other aggrieved employees.

California Labor Code sections 551 and 552 require that every person employed in any occupation of labor is entitled to one day's rest in seven, that no employer of labor shall cause his employees to work more than six days in seven. During the relevant time period, Mr. Sterling and the aggrieved employees were required to regularly and/or consistently work in excess of six (6) consecutive days plus work on the seventh (7th) consecutive day of work and/or at least six (6) consecutive days and eight (8) hours on the seventh (7th) consecutive day of work. During the relevant time period, Mr. Sterling and the aggrieved employees were required to work in excess of thirty (30) hours in a week and/or six (6) hours in any one (1) day thereof, during weeks in which they were required to work in excess of six (6) consecutive days. During the relevant time period, Mr. Sterling and the aggrieved employees were required to work seven (7) or more consecutive days at a time without accumulating or being provided the opportunity to take at least one (1) day of rest. Additionally, when Mr. Sterling and the aggrieved employees were required to work seven (7) or more consecutive days, HITCO failed to afford them accumulated days of rest and/or failed to actually provide them the opportunity to take accumulated days for rest, such that they did not receive the equivalent of at least one (1) day's rest for every seven (7) days during a calendar month.

California Labor Code sections 1174(d) requires an employer to keep, at a central location in the state or at the plants or establishments at which employees are employed, payroll records showing the hours worked daily by and the wages paid to, and the number of piece-rate units earned by and any applicable piece rate paid to, employees employed at the respective plants or establishments. These records shall be kept with rules established for this purpose by the commission, but in any case shall be kept on file for not less than two years. During the relevant time period, HITCO failed to keep accurate and complete payroll records showing the actual hours worked daily and the wages paid, to Mr. Sterling and other aggrieved employees.

**4 |** P a g e

California Labor Code sections 1194, 1197 and 1197.1 provide the minimum wage to be paid to employees, and the payment of a lesser wage than the minimum so fixed is unlawful. During the relevant time period, HITCO did not provide Mr. Sterling and other aggrieved employees with the minimum wages to which they were entitled for work performed "off-the-clock," including without limitation wages lost due to HITCO's rounding and auto-deduct practices.

California Labor Code section 1198 provides that "The employment of any employee ... under conditions of labor prohibited by the [Industrial Wage Orders] is unlawful." The applicable Industrial Wage Orders, including *inter alia*, Wage Orders 1-2001, 4-2001, 9-2001, and 16-2001, require that for each workday an employee is required to report for work and does report, but is not put to work or is furnished less than half said employee's usual or scheduled day's work, the employee shall be paid for half the usual or scheduled day's work, but in no event for less than two (2) hours nor more than four (4) hours, at the employee's regular rate of pay. Further, if an employee is required to report for work a second time in any one workday and is furnished less than two (2) hours of work on the second reporting, said employee shall be paid for two (2) hours at the employee's regular rate of pay. During the relevant time period, HITCO failed to pay Mr. Sterling and other aggrieved employees half the usual or scheduled day's work in an amount no less than two (2) hours nor more than four (4) hours at the employee's regular rate of pay for workdays in which Mr. Sterling and the other aggrieved employees reported to work and were furnished less than half the usual or scheduled day's work. During the relevant time period, HITCO failed to pay Mr. Sterling and other aggrieved employees for two (2) hours at the employee's regular rate of pay on days in which Mr. Sterling and the other aggrieved employees were required to report for work a second time in one workday and were furnished less than two (2) hours of work upon the second reporting.

California Labor Code sections 2800 and 2802 require an employer to reimburse its employee for all necessary expenditures incurred by the employee in direct consequence of the discharge of his or her job duties or in direct consequence of his or her obedience to the directions of the employer. During the relevant time period, Mr. Sterling and other aggrieved employees incurred necessary business-related expenses and costs that were not fully reimbursed by HITCO. These costs include, but are not limited to, the costs using a personal cell phone for business-related purposes, the purchase of steel-toed boots to comply with HITCO's dress code, and the purchase of identification badges.

Therefore, on behalf of all aggrieved employees, Mr. Sterling seeks all applicable penalties arising out of the above-referenced wage, hour, and payroll practices, and those facts and theories set forth in the complaints, asserted in the lawsuit, and espoused herein, which could be assessed and collected by the Agency for violation of the California Labor Code, pursuant to PAGA, including an amount sufficient to recover underpaid wages pursuant to Labor Code section 558.

**5 |** P a g e

If you have any questions or require additional information, please do not hesitate to contact us.

With kind regards,

Edwin Aiwazian, Esq.
Joanna Ghosh, Esq.

Cc:    (By U.S. Certified Mail / Return Receipt Requested)

HITCO Carbon Composites, Inc.
c/o National Registered Agents, Inc.
818 West Seventh Street, Suite 930
Los Angeles, California 90017

Matthew C. Kane, Sabrina A. Beldner, and Sylvia J. Kim
McGuire Woods LLP
1800 Century Park East, 8th Floor
Los Angeles, California 90067

(By U.S. Mail – Under Separate Cover w/ Filing Fee Check Enclosed)

Department of Industrial Relations Accounting Unit
455 Golden Gate Avenue, 10th Floor
San Francisco, California 94102

**EXHIBIT C**

«Barcode»   «BarcodeString»
SIMID «SIMID»
«FirstName» «LastName»
«Address1» «Address2»
«City» «State» «Zip»

## NOTICE OF CLASS ACTION SETTLEMENT

*Andrew Dawson v. HITCO Carbon Composites, Inc.*
**United States District Court for the Central District of California,**
**Case No. 2:16-cv-07337**

---

**You have received this Notice because records of HITCO Carbon Composites, Inc. ("Defendant") indicate that you are or were a non-exempt, hourly-paid employee of Defendant in California at any time during the time period from August 29, 2012 through and including [Preliminary Approval Date] and otherwise fall within the Class definition.**

**You do not need to take any action to receive an Individual Settlement Payment and, unless you submit a timely and valid Request for Exclusion, your legal rights may be affected.**

**This Notice is designed to advise you of your rights and options, and how you can request to be excluded from the settlement, if you so choose.**

---

**PLEASE READ THIS NOTICE CAREFULLY**.  This Notice relates to a proposed settlement of a class action lawsuit. It contains important information about your right to object to or not be included in the settlement.

By order of the United States District Court for the Central District of California (the "Court"), in the case of *Andrew Dawson v. HITCO Carbon Composites, Inc.*, United States District Court for the Central District of California, Case No. 2:16-cv-07337 (the "Litigation") preliminary approval of a proposed class action settlement was granted on [Preliminary Approval Date].  A hearing shall be held on [Final Approval Hearing Date] ("Final Approval Hearing") to determine whether final approval of the class action settlement should be granted.

**YOU ARE NOTIFIED THAT**: a proposed class action settlement has been reached between Plaintiffs Andrew Dawson and Darryl Sterling ("Plaintiffs") and HITCO Carbon Composites, Inc. ("Defendant") (Plaintiffs and Defendant are collectively referred to as the "Parties") in the Litigation, which may affect your legal rights.

## I.    DEFINITIONS

"**Class**" means all non-exempt, hourly-paid employees employed by Defendant and working in the State of California at any time during the Settlement Class Period, and expressly excluding therefrom any such individual who, as of the date the Court grants preliminary approval of the Settlement Agreement, has filed a pending, separate lawsuit as a named plaintiff, individually and/or as a putative class or representative action, asserting the same or similar claims to those alleged in the Litigation and/or has released such claims.

"**Class Member**" means an individual who falls within the definition of the Class.

"**Settlement Class Period**" means the period from August 29, 2012 through and including [Preliminary Approval Date].

## II.    BACKGROUND OF THE LAWSUIT

The Litigation was commenced on August 29, 2016, in the Superior Court of the State of California, County of Los Angeles. The Litigation was eventually removed to federal court, where it is currently pending.  The First Amended Class Action Complaint for Damages was filed on February 21, 2017.  The Second Amended Class Action Complaint for Damages was filed on June 5, 2017.  The Third Amended Class Action Complaint for Damages & Enforcement Under the Private Attorneys General Act, California Labor Code § 2698, Et Seq. ("TAC") was filed on [insert date].  Plaintiffs allege that

«Barcode»
«BarcodeString»                                                                                    SIMID «SIMID»

Defendant failed to properly pay minimum and overtime wages, failed to provide compliant meal breaks and rest breaks and associated premiums, failed to timely pay wages and associated waiting-time penalties, failed to provide accurate wage statements, failed to maintain payroll records, failed to reimburse business expenses, and thereby, engaged in unfair business practices and conduct giving rise to penalties under the California Labor Code Private Attorneys General Act ("PAGA"). Plaintiffs seek, among other things, recovery of unpaid wages and meal and rest period premiums, restitution, penalties, interest, attorneys' fees and costs.

Defendant denies all of the allegations in the Litigation, Defendant denies that it violated any law and Defendant contends that at all times it has complied with federal, state, and local laws.

The Parties participated in a full-day mediation with a respected class action mediator, and as a result of the mediation, the Parties reached a settlement.  The Parties have since entered into the Stipulation for Leave to File Third Amended Class Action Complaint and Settlement and Release of Class Action and PAGA Claims ("Settlement" or "Settlement Agreement"), which was preliminarily approved by the Court on [Preliminary Approval Date].  The Court has preliminary appointed Plaintiffs Andrew Dawson and Darryl Sterling as the representatives of the Class ("Class Representative"), and has preliminarily appointed the following Plaintiffs' counsel as counsel for the Class ("Class Counsel")

**Lawyers *for* Justice, PC**
Edwin Aiwazian, Esq.
Arby Aiwazian, Esq.
Joanna Ghosh, Esq.
410 West Arden Avenue, Suite 203
Glendale, California 91203
Telephone: (818) 265-1020 / Fax: (818) 265-1021

If you are a Class Member, you need not take any action to receive a settlement payment, but you have the opportunity to request exclusion from or object to the settlement, if you so choose, as explained more fully in Section IV below.

The Settlement represents a compromise and settlement of highly disputed claims, and it is not an expression by the Court of an opinion concerning the merits of any claim or defense or the truth of any of the allegations in the Litigation.  Nothing in the Settlement is intended or will be construed as an admission by the Defendant that the claims in the Litigation have merit or that the Defendant has any liability to Plaintiffs or to Class Members.  Plaintiffs and Defendant, and their respective counsel, have concluded and agree that, in light of the risks and uncertainties to each side of continued litigation, the Settlement is fair, reasonable, and adequate, and is in the best interests of Class Members.

## III.    SUMMARY OF THE PROPOSED SETTLEMENT

### A.    Settlement Formula

The maximum settlement consideration is One Million One Hundred Thousand Dollars ($1,100,000) (the "Gross Settlement Fund").  The portion of the Gross Settlement Fund that is available for payment to Class Members who do not timely and properly elect to opt out of the Settlement ("Settlement Class Members") is referred to as the "Net Settlement Fund."

The Net Settlement Fund will be the Gross Settlement Fund less the following payments which are subject to approval by the Court: (1)  Attorneys' Fees and Costs in an amount not to exceed 35% of the Gross Settlement Fund (i.e., $385,000 of $1,100,000) for attorneys' fees and an amount not to exceed One Hundred Thousand Dollars ($100,000) for reimbursement of reasonable litigation costs and expenses to Class Counsel; (2)  Enhancement Awards in the amount of Fourteen Thousand Dollars ($14,000) to Plaintiff Andrew Dawson and in the amount of Six Thousand Dollars ($6,000) to Plaintiff Darryl Sterling, for their services in the Litigation; (3) payment to the Labor and Workforce Development Agency ("LWDA") of its 75% share of the amount that is allocated to penalties under PAGA (i.e., $7,500 to the LWDA out of $10,000); (4) and Settlement Administration Costs (which are currently estimated not to exceed $15,000).

Settlement Class Members will be entitled to receive payment under the Settlement of their share of the Net Settlement Fund ("Individual Settlement Share") based on the number of shifts that he or she worked for Defendant as a non-exempt employee in California during the Settlement Class Period ("Work Shifts").  To determine each Settlement Class Member's

NOTICE OF CLASS ACTION SETTLEMENT
*Questions?  Please call:* [Administrator's Toll-Free Number]

«Barcode»
«BarcodeString»                                                                                                                          SIMID «SIMID»

Individual Settlement Share, the Settlement Administrator will use the following formula:

$$\text{Individual Settlement Share} \quad = \quad \text{Net Settlement Fund} \quad x \quad \frac{\text{Settlement Class Member's Individual Work Shifts}}{\text{Total Work Shifts all Settlement Class Members}}$$

Each Individual Settlement Share shall be allocated as one-quarter (25%) as wages ("Wages Portion"), and one-quarter (25%) as penalties, one-quarter (25%) as statutory and other non-wage damages, and one-quarter (25%) as interest (collectively, the "Non-Wage Portion"). Settlement Class Members will be issued payment of their Individual Settlement Share after reduction for required employee-side and employer-side payroll taxes, contributions, withholding with respect to the Wages Portion of the Individual Settlement Share (the net payment is referred to as "Individual Settlement Payment"). The Wages Portion will be reported by way of IRS Form W-2 and the Non-Wage Portion will be reported by way of IRS Form 1099.

If the Court grants final approval of the Settlement, Individual Settlement Payments will be mailed to each Settlement Class Member at his or her address that is on file with the Settlement Administrator. **If the address to which this Notice was mailed is not correct, or if you move after you receive this Notice, you must make sure to provide your correct mailing address to the Settlement Administrator in a timely fashion, to ensure receipt of payment that you may be entitled to.**

### B.  Your Work Shifts Based on Defendant's Records

According to Defendant's records:

**Between August 29, 2012 to [Preliminary Approval Date], you worked for Defendant in California as an hourly-paid, non-exempt employee for «MERGED_WS_CALC» Work Shifts.**

If you wish to dispute the number of Work Shifts credited to you, you must mail a written dispute ("Work Shifts Dispute") to the Settlement Administrator, postmarked **no later than [Response Deadline]**, at the address listed in Section IV.B below.

The Work Shifts Dispute must include: (a) your full name, current mailing address, signature, telephone number, and last four digits of your Social Security Number; (b) the case name and number of the Litigation (*Dawson v. HITCO Composites, Inc.*, Case No. 2:16-cv-07337); and (c) a statement indicating that you seek to dispute number of Work Shifts credited to you and the number of Work Shifts that you contend should be credited to you; and (d) documentation and/or other facts supporting your position.

### C.  Your Estimated Individual Settlement Share

As explained above, your estimated Individual Settlement Share is based on your number of Work Shifts.

**Under the terms of the Settlement, your Individual Settlement Share is estimated to be $«MERGED_EstSettAmnt_CALC».**

Your Individual Settlement Share reflected on this Notice is only an estimate. Your actual Individual Settlement Share may be higher or lower than estimated, and is subject to reduction for required employee-side and employer-side payroll taxes, contributions, and withholdings with respect to the Wages Portion of the Individual Settlement Share. Payment will be distributed only after the Court approves the Settlement, and after the Settlement goes into effect.

### D.  Released Claims

Upon the occurrence of the Effective Date, Plaintiffs and Settlement Class Members (i.e., Class Members who do not timely and properly elect to opt out of the Settlement) will release HITCO Carbon Composites, Inc. and each of its respective affiliates, parent companies, subsidiaries, shareholders, officers, partners, directors, members, owners, servants, employees, employers, agents, contractors, attorneys, insurers, predecessors, representatives, accountants, executors, successors, and assigns, past, present, and future, including without limitation SGL Technologies LLC and SGL Carbon, LLC, and each

and all of their respective shareholders, officers, partners, directors, members, owners, servants, employees, employers, agents, contractors, attorneys, insurers, predecessors, representatives, accountants, executors, successors, assigns, and pension, profit sharing, retirement savings, health and welfare, and any other employee benefit plans of any nature and the respective trustees, administrators, sponsors, fiduciaries, successors, agents, and employees of all such plans, past, present, and future, and all persons acting under, by, through, or in concert with any of them (collectively, the "Released Parties"), of and from any and all allegations, claims, debts, rights, demands, charges, complaints, actions, causes of action, guarantees, costs, expenses, attorneys' fees, economic damages, non-economic damages, restitution, civil penalties, statutory penalties, liquidated damages, punitive damages, interest, obligations, liabilities, or other monies and remedies, of any and every kind, contingent or accrued, that have been or could have been alleged or asserted in any of the pleadings filed in the Litigation based on the factual and/or legal violations allegations contained therein, including the TAC, and in any notice sent to the LWDA pursuant to PAGA based on the factual and/or legal violations allegations contained therein, including the PAGA notices sent to date or to be sent pursuant to the Settlement, for failure to provide or pay for missed or non-compliant meal breaks, failure to authorize and permit or pay for missed or non-compliant rest breaks, failure to pay or underpaid wages of any type (including minimum and/or overtime wages), failure to timely pay wages of any type, failure to furnish accurate itemized wage statements, failure to provide and maintain accurate timekeeping and/or payroll records, failure to reimburse employment-related expenses, violation of the California Unfair Competition Law ("UCL"), violation of the federal Fair Labor Standards Act ("FLSA"), and/or civil penalties pursuant to PAGA, based in whole or in part on any direct or imputed violation of any federal, state, local or administrative constitution, charter, law, rule, regulation or ordinance, through the date of Final Approval of the Settlement Agreement (collectively, "Released Claims"). To the extent required under applicable law, Settlement Class Members will also be deemed to have opted-in to the Litigation for purposes of the FLSA by operation of cashing, depositing, or otherwise negotiating their Individual Settlement Payment check.

## IV.     WHAT ARE YOUR RIGHTS AND OPTIONS AS A CLASS MEMBER?

### A.     Participate in the Settlement

**If you want to receive money from the Settlement, you do not have to do anything**.  You will automatically receive your Individual Settlement Payment as indicated above in this Notice, if the Court grants final approval of the Settlement, unless you decide to exclude yourself from the Settlement.  Unless you elect to exclude yourself from the Settlement, you will be bound by the terms of the Settlement and any judgment that may be entered by the Court based thereon, and you will be deemed to have released the claims described above in Section III.D of this Notice.  As a member of the Class, you will not be separately responsible for the payment of attorney's fees or reimbursement of litigation expenses, unless you retain your own counsel, in which event you will be responsible for your own attorney's fees and expenses.

### B.     Request Exclusion from the Settlement

If you do not wish to participate in the Settlement, you may seek exclusion from the Settlement by mailing a written request for exclusion ("Request for Exclusion") to the Settlement Administrator, postmarked **on or before [Response Deadline]**, at the following address:

Dawson v. HITCO Composites, Inc.
c/o Simpluris, Inc.
[Address]

A Request for Exclusion must include: (a) your full name, current mailing address, signature, and last four digits of your Social Security number; (b) the case name and number of the Litigation; and (c) a statement that you seek to be excluded from the Settlement Agreement, the same or substantially similar to the following language: "I elect to opt-out of the *Dawson v. HITCO Carbon Composites, Inc.* class action settlement.  I understand that by doing so, I will not participate in the settlement, and will not receive any money from it."

If the Court grants final approval of the Settlement, any Class Member who timely and properly elects to opt out of the Settlement will not be entitled to receive any payment from the Settlement, will not be bound by the Settlement Agreement (and the release of claims stated in Section III.D above), and will not have any right to object to, appeal, or comment on the Settlement.

«Barcode»
«BarcodeString»                                                                                                              SIMID «SIMID»

Any Class Member who does not timely and properly elect to opt out from the Settlement by submitting a Request for Exclusion will be bound by all terms of the Settlement, including those pertaining to the release of claims stated in Section III.D above, as well as any judgment that may be entered by the Court based thereon.

## C. Object to the Settlement

You can object to the terms of the Settlement by mailing a written objection ("Objection") to the Settlement Administrator, postmarked **no later than [Response Deadline]**, at the address listed in Section IV.B above.  You can only submit an Objection as long as you have not submitted a Request for Exclusion.  However, if the Court rejects your Objection, you will still be bound by the terms of the Settlement.

An Objection must include: (a) the objector's full name, current mailing address, signature, and last four digits of his or her Social Security number; (b) the case name and number of the Litigation (*Dawson v. HITCO Composites, Inc.*, Case No. 2:16-cv-07337); (c) a statement indicating the legal and factual grounds for the objection; (d) a statement whether the objector is represented by counsel and identifying such counsel; (e) a statement indicating whether the objecting Class Member intends to appear for and wishes to be heard at the Final Approval Hearing.

If you choose to submit an Objection, you may (but are not required to) enter an appearance *in propria persona* (meaning you choose to represent yourself) or through your own attorney.  If you choose to have your own attorney, you will be solely responsible for the fees and costs of your own attorney.  You do not need to appear to have your Objection considered by the Court.

## V.   FINAL APPROVAL HEARING

The Court will hold a hearing in Courtroom 6A located in the First Street Courthouse, 350 West 1st Street, 6th Floor, Los Angeles, California 90012-4565, on [Final Approval Date], at [Time], to determine whether the Settlement should be finally approved as fair, reasonable, and adequate.  The Court also will be asked to rule on the request for payment of Attorneys' Fees and Costs, Enhancement Awards, and Settlement Administration Costs.

The hearing may be continued without further notice to the Class Members.  It is not necessary for you to appear at the Final Approval Hearing.

## VI.   ADDITIONAL INFORMATION

The above is a summary of the basic terms of the Settlement.  For the precise terms and conditions of the Settlement Agreement, you should review the detailed Settlement Agreement and other papers which are on file with the Court.   You may review the Settlement Agreement and other court records by using Public Access to Court Electronic Records System ("PACER") (for a fee) or by contacting the Settlement Administrator or Class Counsel.

**PLEASE DO NOT TELEPHONE THE COURT OR OFFICE OF THE CLERK OF THE COURT FOR INFORMATION REGARDING THE SETTLEMENT.**

**YOU MAY CALL THE SETTLEMENT ADMINISTRATOR AT THE FOLLOWING TOLL-FREE NUMBER IF YOU HAVE QUESTIONS: [Administrator's toll-free number].**

**YOU MAY ALSO CONTACT CLASS COUNSEL IF YOU HAVE ANY QUESTIONS.**

«Barcode»
«BarcodeString»

SIMID  «SIMID»